## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ARDAGH METAL PACKAGING USA CORP. F/K/A ARDAGH METAL BEVERAGE USA INC.,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No: _____** |
| **v.** | ) ) ) | |
| **AMERICAN CRAFT BREWERY, LLC D/B/A VARIOUS BOSTON BEER BREWERIES,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT

Plaintiff Ardagh Metal Packaging USA Corp. f/k/a Ardagh Metal Beverage USA Inc. ("Ardagh"), by and through its undersigned counsel, brings this complaint against Defendant American Craft Brewery, LLC d/b/a various Boston Beer breweries ("ACB"), and alleges as follows:

### <u>NATURE OF THE CASE</u>

1.      This is a breach of contract action that arises out of ACB's failure to purchase the contractual minimum volumes of certain aluminum beverage can containers in 2021 and 2022, its refusal to provide reasonable assurances of its future performance of its contractual obligations, and its anticipated failure to purchase a minimum volume of certain aluminum beverage can containers in each of ███ through ███, all in material breach of ACB's contractual obligations pursuant to the Aluminum Beverage Can Supply Agreement, effective as of January 1, 2020 (the "Initial Agreement"), as amended by the First Amendment to Can Supply Agreement effective as

of December 22, 2020 (the "Amendment" and together with the Initial Agreement, the "Amended Agreement").

2.      Based upon ACB's material breach of the Amended Agreement, Ardagh seeks its available remedies, including recovery of damages in the tens of millions of dollars and more, far in excess of $75,000 exclusive of interest, costs, and attorneys' fees.

3.      In the alternative, Ardagh seeks specific performance requiring ACB to perform its obligations under the Amended Agreement, including the timely purchase of the contractual minimum volumes of aluminum beverage can containers for each of 2021, 2022, ▉▉▉▉▉▉▉ ▉▉▉▉.

## PARTIES, JURISDICTION, AND VENUE

4.      Ardagh is a corporation organized and existing under Delaware law with its principal place of business in Chicago, Illinois.  For diversity purposes, Ardagh is a citizen of the State of Delaware and the State of Illinois.

5.      ACB is a limited liability company existing and organized under Massachusetts law with a principal place of business in Boston, Massachusetts.

6.      The sole member of ACB is Boston Beer Company, Inc., a corporation organized and existing under Massachusetts law with a principal place of business in Boston, Massachusetts. For diversity purposes, ACB is a citizen of the Commonwealth of Massachusetts.

7.      The Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the controversy is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The Court has personal jurisdiction over ACB because ACB continuously conducts business and sells its products in Illinois and this action arises out of specific activities undertaken by ACB within and affecting the State of Illinois, including:

(a) ACB is registered with the Illinois Secretary of State to do business in Illinois;

(b) ACB continuously does business in Illinois, including by advertising its products throughout Illinois and selling its products throughout Illinois;

(c) ACB contracted with Ardagh, a corporation with its principal place of business located in Illinois;

(d) ACB conducted negotiations of the Amended Agreement in Illinois by directing its communications regarding the contract into Illinois;

(e) All notices under the Amended Agreement were to be provided to Ardagh in Illinois, and ACB employees and executives regularly communicated regarding the Amended Agreement with Ardagh employees and executives in Illinois;

(f) ACB made payments to Ardagh under the Amended Agreement in Illinois;

(g) The testing of ACB's beverages for the cans produced under the Amended Agreement took place in Illinois;

(h) The artwork and graphic design for the cans produced under the Amended Agreement took place in Illinois; and

(i) ACB personnel travelled to Ardagh's facilities in Illinois related to the foregoing design work.

9. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district—namely,

ACB contracted with Ardagh, a corporation with its principal place of business located in this judicial district, to purchase certain aluminum beverage can containers and thereafter failed to honor its obligations to Ardagh.

## FACT ALLEGATIONS

**The Amended Agreement and Ardagh's Reasonable Reliance on ACB's Promises**

10. Effective January 1, 2020, Ardagh and ACB entered into the Initial Agreement pursuant to which Ardagh agreed to supply, and ACB agreed to purchase, a minimum volume of certain aluminum beverage can bodies ██████████████, referred to as ██████████ cans, in each of 2020, 2021, and 2022.

11. Beginning only months after the effective date of the Initial Agreement, ACB requested certain modifications of the Initial Agreement. In response to ACB's request, Ardagh engaged in negotiations with ACB for modification of the Initial Agreement.

12. ACB sought modification to:

   (a) extend the term of the Initial Agreement through ███████████;

   (b) add additional ████████████████████ cans ████████████████ ████ for purchase;

   (c) increase the annual minimum purchase and supply requirements for ████ can bodies ████████████████ that are the subject of the Initial Agreement through ████████ ████; and

   (d) reserve Ardagh's production capacity up to annual maximum volumes.

13. Effective December 22, 2020, Ardagh and ACB entered into the Amendment, which extended the term of the Initial Agreement through ██████████, added additional ██ ████████████████████ cans ██████████████ for purchase, and set specific annual

minimum purchase requirements for ████ can bodies ██████████ that are the subject of the Amended Agreement ███████, which the Amendment refers to as the "Annual Minimum Volume" for each can body.

14.    Section 2.2 of the Amended Agreement requires ACB to purchase enumerated minimum volumes: ████████████████████████████████

████████████████████████████████████

█████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

15.    Section 2.2's Annual Minimum Volumes is a non-discretionary requirement of ACB with no predicate conditions: ████████████████████████

███████████████████████████████████████

██████████████████████████

16.     Section 2.2.1 of the Amended Agreement requires ███████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████



17.     In reliance on ACB's request to amend the Initial Agreement and ACB's contractual obligation to purchase the Annual Minimum Volumes agreed to in the Amendment, Ardagh reserved manufacturing capacity and invested capital to create and to operate additional manufacturing capacity to supply ACB with ACB's required minimum (and maximum) container purchases at the expense of selling and contracting that same capacity to other customers.

18.     In reasonable reliance upon ACB's representations in negotiations of the Initial Agreement, ACB's representations in negotiations of the Amendment, and ACB's contractual commitments in the Amended Agreement, Ardagh has spent millions of dollars to ensure it would meet its obligations to ACB under the Amended Agreement. These expenditures include but are not limited to incurring labor and energy costs; purchasing aluminum and other materials; and purchasing, installing, and operating new production equipment.

**ACB Breaches the Amended Agreement.**

19.     In 2021, ACB failed and refused to purchase the defined Annual Minimum Volumes of the ███████████████████ can bodies ████████████████.

20.     Specifically, for the ████████ can, ACB was required to purchase ██████ cans in 2021, but it purchased █████████████████ cans.

21.     For the ███████ can, ACB was required to purchase ██████████ in 2021, but it purchased ███████████████ cans.

22.     For the ████ can, ACB was required to purchase ███████████ in 2021, but it purchased ████████████ cans.

23.     The following tables show the Annual Minimum Volumes set forth in the Amended Agreement; ACB's actual purchases in 2021; ACB's purchases in 2022 (based on actual purchases through November and ACB's December forecast); ████████████████████████████ ████████████████████; and the corresponding shortfalls, with all volumes expressed in thousands of units.





24.     ACB failed and refused to purchase the Annual Minimum Volumes in 2021 and in 2022.

25.     In 2022, the Amended Agreement requires ACB to purchase ██████████ cans, but ACB purchased ████████████████████ cans, which did not satisfy ACB's obligation to make up its 2021 purchase shortfall, let alone begin to meet its ████████ purchase requirement for 2022.

26.     In 2022, the Amended Agreement requires ACB to purchase ██████████ ████ cans, but ACB failed to make the ████████ cans purchases to satisfy ACB's obligation to make up any purchase shortfall in the next subsequent year as well as ACB's ██ ██████████ can purchase required for 2022.

27.     In 2022, the Amended Agreement requires ACB to purchase ████████ cans and ACB is expected to purchase ██████████████ cans, which would satisfy ACB's obligation to make up its 2021 purchase shortfall but leaves ACB having met ████ ██████████ can purchase required for 2022.

28.     Pursuant to the applicable provisions of the Uniform Commercial Code, Ardagh demanded reasonable assurances from ACB that it will (a) cure its current defaults and (b) perform its contractual obligations for future years as required by the Amended Agreement.

29. ACB has failed and refused to provide Ardagh with reasonable assurances either that it will cure its defaults or perform its contractual obligations for the remaining term of the Amended Agreement.

30. Upon information and belief, ACB knows and expects that it will fail to remedy any of its purchasing shortfalls and will continue to fail to meet the Annual Minimum Volumes for 2021, 2022, and all future years, and the shortfalls will accumulate and compound during the remaining term of the Amended Agreement.

31. Upon information and belief, throughout the term of the Amended Agreement ACB had made other aluminum beverage can purchasing commitments to, and purchases from, a third party, Ball Corporation ("Ball"). At the time that ACB entered into the Amendment with Ardagh, ACB knew or reasonably should have known that its arrangement with Ball would preclude ACB from being able to purchase the Annual Minimum Volumes ███████████████.

32. Upon information and belief, ACB entered into the Amended Agreement and has conducted itself during the term of the Amended Agreement with knowledge its representations and omissions would mislead Ardagh or with reckless indifference to the fact its representations and omissions would mislead Ardagh; and with reckless indifference or knowing disregard of the rights of Ardagh, the significant investment of time and resources that Ardagh would be making in connection with the Amended Agreement, and the harm Ardagh would and is suffering as the result of ACB's continuing breach of the Amended Agreement.

33. ACB's failure timely to disclose to Ardagh that ACB would fail to purchase the Annual Minimum Volumes for 2022 and ACB's further failure to provide reasonable forecasts for future years of the term of the Amended Agreement has reduced and precluded Ardagh from avoiding the consequences of ACB's breach, including efforts to identify and contract with a

replacement buyer for the 2021, 2022, and future shortfalls of ACB's purchase of Annual Minimum Volumes, as well as avoiding expenditures of additional capital to meet the production requirements of the Amended Agreement.

34.     All conditions precedent to suit have been satisfied, including Ardagh's compliance with Section 15 of the Amended Agreement.

35.     Ardagh attempted to settle this dispute through good faith consultation with ACB for several months in the summer and fall of 2022.  These consultations included, without limitation, Ardagh sales personnel repeatedly attempting to discuss the shortfalls with ACB personnel to no avail; Ardagh senior officers requesting reasonable assurances from ACB that it would comply with its obligations under the contract; and Ardagh senior officers initiating consultations directly with ACB senior officers regarding the severity of the breaches and damages and potential remedies.

36.     Because Ardagh's good faith consultations did not result in resolution of the dispute, Ardagh provided ACB with formal written notice of the dispute on October 21, 2022. Because Ardagh and ACB had been engaged in consultations for several months without success, Ardagh proposed that the parties waive ██████████████████████████████████ ████████████████████████████████.

37.     On November 10, 2022, ACB agreed with Ardagh to waive ████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████.

38.     Ardagh commenced a mediation with JAMS through written request on November 15, 2022.

39. ████████████████████████████████████████████████████████████

████████████████████████████████████.

40. Following commencement of the mediation, ACB has refused to agree to a mediator (refusing to even consider or discuss any of the eight mediators recommended by JAMS), has sought to postpone the mediation until February, and has prevented the mediation from occurring ███████████████████████████████████.

41. Despite Ardagh's good faith efforts, the parties failed to resolve this dispute by mediation ███████████████████████████████.

42. Because there has been no mediation and the mediation specified in the Amended Agreement has failed (due to ACB's refusal to conduct it), Ardagh may pursue this litigation.

## COUNT I
(Breach of the Amended Agreement)

43. Ardagh incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

44. The Amended Agreement is a valid, binding, and enforceable contract.

45. Ardagh has performed all of its obligations under the Amended Agreement for 2021 and 2022. It remains willing and able to perform its obligations ████████████████████████ under the Amended Agreement.

46. Ardagh has satisfied any and all conditions precedent to filing this lawsuit for enforcement of the Amended Agreement.

47. ACB has breached the Amended Agreement by failing to purchase the 2021 and 2022 Annual Minimum Volumes of the ███████████████████████ can bodies ████ ████████████.

48.     ACB has breached the Amended Agreement after Ardagh's demand for reasonable assurances by failing to provide Ardagh with reasonable assurances either that it will cure its defaults or perform its contractual obligations for the remaining term of the Amended Agreement.

49.     ACB has failed and refused to remedy its material breaches of the Amended Agreement.

50.     ACB's behavior in connection with its breaches has been egregious because ACB entered into an aluminum can purchasing agreement with Ball, an act which ACB understood would preclude it from purchasing the Annual Minimum Volumes under the Amended Agreement with Ardagh.

51.     As a direct and proximate result of ACB's breaches of the Amended Agreement, Ardagh has been and continues to be directly damaged in an amount to be proven at trial in the tens of millions of dollars and more, but not less than $75,000, plus prejudgment and post-judgment interest and all costs, including attorneys' fees, incurred by Ardagh in pursuing this litigation or otherwise enforcing its rights under the Amended Agreement.

52.     Ardagh is entitled to an award of direct damages in an amount to be proven at trial in the tens of millions of dollars and more.

53.     In the alternative, as a direct and proximate result of ACB's breach of the Amended Agreement, and because there is no other adequate remedy at law, Ardagh is entitled to an order of specific performance requiring ACB to comply with the terms of the Amended Agreement, including purchasing the 2021 and 2022 shortfall Annual Minimum Volumes and the requisite Annual Minimum Volumes in each year thereafter ███████████████.

54.     The cans that ACB is obligated to purchase are not fungible and, due to the massive volume of the Annual Minimum Volumes shortfalls, present special circumstances that may result

in Ardagh having to close production lines or facilities due to an inability to sell the cans to another party.

55.     The circumstances of the instant case are such that an award of specific performance is proper.

56.     Further, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

57.     Upon information and belief, ACB's conduct and positions have been and continue to be egregious within the definition of the Amended Agreement.

58.     Ardagh as the party seeking enforcement is entitled to an award of reasonable costs, fees and expenses, including attorneys' fees.

**WHEREFORE**, Ardagh respectfully requests that the Court:

(a)     Enter judgment against ACB for breach of the Amended Agreement in an amount to be determined at trial, but not less than $75,000;

(b)     In the alternative, enter an order of specific performance requiring ACB to comply with the terms of the Amended Agreement, including purchasing the 2021 shortfall Annual Minimum Volumes in 2022, the 2022 shortfall Annual Minimum Volumes ████, and the requisite Annual Minimum Volumes in each year thereafter ████████████████;

(c)     Award Ardagh pre-judgment and post-judgment interest as permitted by law;

(d)     Award Ardagh costs and reasonable attorneys' fees incurred in pursuing this action as provided by the Amended Agreement and permitted by law; and

(e)     Award Ardagh such other and further relief as shall be just and proper.

**COUNT II**
(Declaratory Judgment)

59.     Ardagh incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     The Amended Agreement is a valid, binding, and enforceable contract.

61.     The ████████████████████████ can bodies ████████████████ that Ardagh agreed to make for ACB pursuant to the Amended Agreement are not fungible and have been designed and manufactured specifically for ACB, at ACB's request.

62.     Ardagh fully performed all of its obligations under the Amended Agreement for 2021 and 2022; Ardagh remains willing and able to perform its obligations ████████████████ ██████ under the Amended Agreement; and Ardagh has satisfied any and all conditions precedent to enforcement of the Amended Agreement.

63.     ACB has materially breached the Amended Agreement by failing to purchase the 2021 Annual Minimum Volumes of the ██████████████████████ can bodies ████ ██████████████ .

64.     Despite demand by Ardagh, ACB has failed or refused to remedy its material breach of the Amended Agreement.

65.     Despite demand by Ardagh, ACB has failed or refused to provide reasonable assurances that it will remedy its material breaches of the Amended Agreement or perform its purchase obligations for the remaining term of the Amended Agreement.

66.     Ardagh is entitled to a declaratory judgment that ACB is in breach of the Amended Agreement for the years 2021, 2022, and that ACB is required to purchase the Annual Minimum Volumes in future years of the term of the Amended Agreement.

14

67. Further, ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

68. Upon information and belief, ACB's conduct and positions have been and continue to be egregious within the definition of the Amended Agreement.

69. Ardagh as the party seeking enforcement is entitled to an award of reasonable costs, fees and expenses, including attorneys' fees.

**WHEREFORE**, Ardagh respectfully requests that the Court:

(a) Declare ACB in breach of the Amended Agreement for the years 2021 and 2022;

(b) Declare that ACB is required to purchase the Annual Minimum Volumes in future years of the term of the Amended Agreement;

(c) Enter an order of specific performance requiring ACB to comply with the terms of the Amended Agreement, including purchasing the 2021 shortfall Annual Minimum Volumes in 2022, the 2022 shortfall Annual Minimum Volumes ██████, and the requisite Annual Minimum Volumes in each year thereafter ██████████████████;

(d) Award Ardagh pre-judgment and post-judgment interest as permitted by law;

(e) Award Ardagh costs and reasonable attorneys' fees incurred in pursuing this action as provided by the Amended Agreement and permitted by law; and

(f) Award Ardagh such other and further relief as shall be just and proper.

## <u>JURY TRIAL DEMAND</u>

Ardagh demands a trial by jury for all issues so triable.

Date: December 31, 2022

| | |
|---|---|
| /s/ *Adam J. Glazer* | James P. McLoughlin, Jr. (N.C. Bar No. 13795) |
| Adam J. Glazer (IL ARDC No. 6199294) | (*Pro Hac Vice* anticipated) |
| Richard M. Goldwasser (IL ARDC No. 6205119) | Christopher D. Tomlinson (N.C. Bar No. 38811) |
| | (*Pro Hac Vice* anticipated) |
| ***SCHOENBERG FINKEL BEEDERMAN*** | Elena F. Mitchell (N.C. Bar No. 50883) |
| ***BELL GLAZER, LLC*** | (*Pro Hac Vice* anticipated) |
| 300 South Wacker Drive, #1500 | Joseph M. Piligian (N.C. State Bar No. 57533) |
| Chicago, IL 60606 | (*Pro Hac Vice* anticipated) |
| Telephone: (312) 648-2300 | ***MOORE & VAN ALLEN PLLC*** |
| Facsimile: (312) 648-1212 | 100 North Tryon Street, Suite 4700 |
| Adam.Glazer@sfbbg.com | Charlotte, North Carolina 28202-4003 |
| Richard.Goldwasser@sfbbg.com | Telephone: (704) 331-1000 |
| | Facsimile: (704) 331-1159 |
| | jimmcloughlin@mvalaw.com |
| | christomlinson@mvalaw.com |
| | elenamitchell@mvalaw.com |
| | joepiligian@mvalaw.com |

**ATTORNEYS FOR PLAINTIFF**