**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARDAGH METAL PACKAGING USA CORP. F/K/A ARDAGH METAL BEVERAGE USA INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 1:22-cv-07367 (FUV) (JC) |
| | ) | |
| AMERICAN CRAFT BREWERY, LLC D/B/A VARIOUS BOSTON BEER BREWERIES, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO DISMISS CERTAIN COUNTERCLAIMS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Ardagh Metal Packaging USA Corp. ("Ardagh") submits this memorandum of law in support of its motion to dismiss certain counterclaims asserted by Defendant American Craft Brewery ("ACB").

**PRELIMINARY STATEMENT**

Pursuant to Rule 12(b)(6), Ardagh moves to dismiss ACB's counterclaims for breach of the duty of good faith and fair dealing (Counts IV and V), breach of warranty of fitness for a particular purpose (Counts VI and VII), and negligent misrepresentation (Count VIII). ACB's counterclaims for breach of the duty of good faith and fair dealing should be dismissed because they are purely duplicative of ACB's breach of contract counterclaims. ACB's claims for breach of warranty of fitness for a particular purpose are barred by the warranty disclaimer in the parties' agreement. And ACB's negligent misrepresentation claim is precluded by the economic loss doctrine.

## FACTS

The following facts alleged by ACB in its counterclaims are accepted as true solely for the purposes of this motion to dismiss.  ACB manufactures alcoholic beverages including brands such as Samuel Adams, Twisted Tea, Angry Orchard, and Truly Hard Seltzer. (Countercls. ¶ 5 (ECF No. 20).)  Ardagh supplies metal cans and █████ for certain of ACB's beverages. (*Id.* ¶¶ 6, 32.)  ACB and Ardagh entered into an Aluminum Beverage Can Supply Agreement effective January 1, 2020 (the "Initial Agreement") and a First Amendment to Can Supply Agreement dated December 22, 2020 (the "First Amendment", and together with the Initial Agreement, the "Amended Agreement"). (*Id.* ¶¶ 10–11.)[1]  The Amended Agreement provides annual minimum volumes ███████████ ████████████████████████ that ACB must purchase from Ardagh each year from 2021 through ████. (*Id.* ¶¶ 10–12.)

Pursuant to Section 20.4 of the Amended Agreement, Ardagh warranted that ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ (Ex. A, § 20.4; *see* Countercls. ¶¶ 34–35.)  The Specifications include that ████████████████████████████████████ ████████████████████████████████████████████████████

---

[1] A true and accurate copy of the Amended Agreement, comprised of the Initial Agreement and the First Amendment, is attached hereto as Exhibit A. Because the Complaint and Counterclaims explicitly cite and rely upon the Amended Agreement, it is appropriate for the Court to consider the Amended Agreement at the motion to dismiss stage. *See, e.g.*, *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 934 (N.D. Ill. 2021) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (holding that it is proper for a court to consider, in addition to the allegations set forth in a pleading, documents attached to that pleading or that "are central to" the pleading and "referred to in it, and information that is properly subject to judicial notice").

████████████████████████████████████████

████████████████████ (Countercls. ¶ 36.)

The Amended Agreement includes the following warranty disclaimer:



(Ex. A, § 20.8.)

ACB alleges that in May 2020 it notified Ardagh about a dark sticky buildup on cans and ACB's lines that it noticed as the cans were run through the Filling Process, which appeared to be an issue with the ████ Ardagh was using. (Countercls. ¶¶ 40–42.) ACB does not identify which ████████ was allegedly causing this issue. ACB alleges that Ardagh told ACB it had been using an ████████ but committed in late May 2020 to switching to a ████ known as ████. (*Id.* ¶ 45.) ACB does not identify who from Ardagh made this commitment, to whom at ACB it was made, or any specifics of any communications regarding this commitment. ACB continued to purchase cans from Ardagh and alleges that it "periodically" saw problems with cans affecting its Filling Process. (*Id.* ¶ 47.) ACB does not allege that it notified Ardagh of any further problems until roughly two and a half years later, when in October 2022, ACB notified Ardagh of substance build-up issues. (*Id.* ¶ 51.) ACB alleges that when the parties discussed this issue in January 2023, it discovered that Ardagh was using ████████ on only 25% of the cans it was supplying to ACB. (*Id.* ¶ 52.) ACB again does not identify the ████████ purportedly causing this issue.

ACB also alleges that Ardagh's use of a ████████████ to connect the can body to the can end caused the build-up on the cans and ACB's production lines. (*Id.* ¶¶ 57–62.) ACB

complains that Ardagh was aware of the ████████████ causing problems for other companies but did not inform ACB of these problems.  (*Id.* ¶ 63.)

ACB does not allege that the Specifications, or any other provision of the Amended Agreement, required Ardagh to use a certain ██████ or ██████.  ACB also does not allege that Ardagh used an ████████████ on its cans that ACB had not approved prior to the supply of cans under the Amended Agreement or that the ████████████ use breached any Specification in the Amended Agreement.

Based on the foregoing, ACB has asserted counterclaims for breach of contract, breach of the duty of good faith and fair dealing, breach of the implied warranty of fitness for a particular purpose, and negligent misrepresentation.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[L]egal conclusion[s] couched as a factual allegation'" and "formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  In deciding a Rule 12(b)(6) motion, it is proper for a court to consider not only the allegations set forth in a pleading, but also the documents attached to that pleading or that "are central to" the pleading and "referred to in it, and information that is properly subject to judicial notice."  *O'Connor*, 567 F. Supp. 3d at 934 (quoting *Williamson*, 714 F.3d at 436).

## ARGUMENT

### I.     ACB'S COUNTERCLAIMS ARE GOVERNED BY NEW YORK LAW.

This matter is before the court under diversity jurisdiction.  (*See* ECF No. 1 ¶ 7; Countercls. ¶ 7); *see also* 28 U.S.C. § 1332.  In the Seventh Circuit, when sitting in diversity the courts apply "the choice-of-law rules used by the state in which the federal district court where the case was filed sits—here, Illinois."  *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018).  "Illinois courts usually enforce contractual choice-of-law provisions."  *Id.* (citations omitted).  Because the Amended Agreement states that it is governed by New York law (Ex. A, pp. 20, 74), this Court should apply New York law to the substance of the parties' contract-based claims.  *NewSpin Sports*, 910 F.3d at 300; *Bank of Am. Nat'l Ass'n v. Bassman FBT, L.L.C.*, 2012 Ill. App. 2d 110729, ¶ 10, 981 N.E.2d 1, 6 (2012) (internal quotation marks and citation omitted) ("Courts should give effect to a choice-of-law provision in a contract . . . unless the contract chooses a foreign law that is dangerous, inconvenient, immoral, [or] contrary to the public policy of the local government.").

Likewise, this Court should apply New York law to the substance of ACB's tort-based claims that are "contract-dependent[.]"  *NewSpin Sports*, 910 F.3d at 306.  "[I]n Illinois, 'tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause.'"  *Id.* (quoting *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002) (citing additional cases)).  Because each of the allegations relating to ACB's counterclaims arises out of, or otherwise involves, the parties' relationship as governed by the Amended Agreement, they are contract-based or contract-dependent, and, therefore, should be analyzed under New York law. *See, e.g.*, *NewSpin Sports*, 910 F.3d at 306 (holding New York law applied to the substance of plaintiff's contract *and* tort claims because all

the relevant allegations "involve[d] the parties' relationship as governed by [an agreement]" containing a New York choice of law provision).

## II.  ACB'S COUNTERCLAIMS FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ARE DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIMS.

New York law implies a duty of good faith and fair dealing in every contract, but "[b]reach of the duty . . . is simply a breach of the underlying contract." *In re ALT Hotel, LLC*, 479 B.R. 781, 796–97 (Bankr. N.D. Ill. 2012) (dismissing a claim for breach of the implied covenant of good faith and fair dealing under Rule 12(b)(6) as duplicative of a breach of contract claim under New York law).  Consequently, a party "cannot state a claim for breach of the implied duty of good faith and fair dealing 'when a breach of contract claim, based upon the same facts, is also pled.'" *Id.* (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)); *see also Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 813 (7th Cir. 2011) (internal quotation marks and citation omitted) ("New York courts . . . view claims for breach of good faith and fair dealing as duplicative of a claim sounding in breach of contract.").

ACB's counterclaims for breach of the duty of good faith and fair dealing (Counts IV and V) should be dismissed as duplicative of ACB's claims for breach of the Amended Agreement (Counts II and III).  *See McGee v. State Farm Mut. Auto. Ins. Co.,* No. 09-CV-3579, 2011 U.S. Dist. LEXIS 128913, 2011 WL 5409393, at *8 (E.D.N.Y. Nov. 8, 2011) (claim for breach of the covenant of good faith and fair dealing will be duplicative of a breach of contract claim when the same allegations or the same conduct is the predicate for both claims); *Deutsche Bank Secs. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (holding that to avoid redundancy, "[c]laims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract," and dismissing implied covenant claim).

6

In Count II, ACB alleges that Ardagh breached the Amended Agreement by using an

unsuitable 

> By using ████ that caused buildup, slowdown, shutdown and disruption on ACB's Filling Process's lines, Ardagh failed to manufacture cans suitable in all respects for the intended ███████████████████████████████████████

(Countercls. ¶ 81.)  In Count IV, ACB alleges that the same conduct—use of unsuitable ████—

breached a duty of good faith and fair dealing:

> By failing to change to a ████ appropriate for ACB's cans and Filling Process Lines, and knowingly allowing ACB to continue to sustain damages incurred by repeated slowdowns and breakdowns of its filling lines due to Ardagh's use of the unsuitable ████, Ardagh arbitrarily and unreasonably deprived ACB of the benefits of the Agreements' terms, in violation of the implied covenant of good faith and fair dealing.

(*Id.* ¶ 100.)

ACB makes the same allegations of use of a purportedly unsuitable ████ in Count

III (breach of the Amended Agreement) and Count V (breach of the duty of good faith and fair

dealing).  (*Compare* Countercls. ¶ 91 *with* ¶ 109.)

Further, ACB effectively seeks the same relief for each of these claims—nothing more than

damages in excess of $75,000. (Countercls. ¶¶ 84, 94, 102, 111 & PRAYER FOR RELIEF).  *See*

*Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005) (internal quotation marks and

citation omitted) ("If the allegations do not go beyond the statement of a mere contract breach and,

relying on the same alleged acts, simply seek the same damages or other relief already claimed in

a companion contract cause of action, they may be disregarded as superfluous as no additional

claim is actually stated").

ACB's claims for breach of the duty of good faith and fair dealing expressly incorporate and rely upon each and every one of the allegations upon which it bases its claims for breach of contract. (*See* Countercls. ¶¶ 95 & 103 incorporating all prior allegations.) Because the claims for breach of the duty of good faith and fair dealing rely on the same facts and seek the same damages as the claims for breach of the Amended Agreement, they should be dismissed. *See Refreshment Mgmt. Servs., Corp. v. Complete Off. Supply Warehouse Corp.*, 933 N.Y.S.2d 312, 315 (N.Y. App. Div. 2011) ("a cause of action alleging breach of the implied covenant of good faith and fair dealing must be dismissed if it is merely duplicative of a breach of contract claim"); *320 W. 115 Realty LLC v. All Bldg. Constr. Corp.*, 149 N.Y.S.3d 28, 30 (N.Y. App. Div. 2021) (dismissing claim for breach of good faith and fair dealing because "plaintiff relies on the same facts that form the basis for the breach of contract claim and seek the exact same damages"); *Spread Enters. v. First Data Merch. Servs. Corp.,* No. 11-CV-4743, 2012 U.S. Dist. LEXIS 119080, 2012 WL 3679319, at *3 (E.D.N.Y. Aug. 22, 2012) ("Under New York law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim."); *see also Amcan Holdings, Inc. v. Canadian Imperial Bank of Comm.*, 894 N.Y.S.2d 47, 49–50 (N.Y. App. Div. 2010) (upholding dismissal of the claim for breach of the implied covenant as duplicative of the breach-of-contract claim).

Moreover, as a practical matter, if Ardagh's use of the ███████ and ██████████ ACB complains of was not a breach of the Amended Agreement, it cannot be the basis of a breach of a duty of good faith and fair dealing. Ardagh's alleged use of the ████████ and ███████████ was either permitted under the Amended Agreement or it was not.

8

### III. ACB'S COUNTERCLAIMS FOR BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE ARE BARRED BY THE AMENDED AGREEMENT'S WARRANTY DISCLAIMER.

In Counts VI and VII, ACB asserts that Ardagh's use of allegedly unsuitable ▇▇▇ and ▇▇▇▇▇, respectively, rendered the cans supplied by Ardagh unfit for their intended purpose and breached an implied warranty of fitness for a particular purpose. These counterclaims cannot survive dismissal because any implied warranty of fitness for a particular purpose is expressly disclaimed in the Amended Agreement. New York courts routinely enforce disclaimers of the implied warranty of fitness for a particular purpose so long as such disclaimers are in writing and conspicuous. *See* N.Y. U.C.C. § 2-316 ("[T]o exclude or modify any implied warranty of fitness[, an] exclusion must be by a writing and conspicuous."). A disclaimer is conspicuous when it appears in all capital letters. *See, e.g.*, *W. 63 Empire Assocs., LLC v. Walker & Zanger, Inc.*, 968 N.Y.S.2d 455, 457 (N.Y. App. Div. 2013) (holding that "the broad, express, and conspicuous disclaimer of all warranties set forth in the invoice memorializing the [relevant] sale" was "fatal" to plaintiff's claim for breach of the implied warranty of fitness for a particular purpose).

Here, Section 20.8 of the Amended Agreement provides:



(Ex. A, § 20.8.) Because the Amended Agreement expressly disclaims—conspicuously in all capital letters—any implied warranty of fitness for a particular purpose, this Court should dismiss Counts VI and VII with prejudice pursuant to Rule 12(b)(6). *See, e.g.*, *W. 63 Empire Assocs.*, 968 N.Y.S.2d at 457; *Naftilos Painting, Inc. v Cianbro Corp.*, 713 N.Y.S.2d 626, 627 (N.Y. App. Div.

2000) (trial court erred in failing to dismiss causes of action for breaches of express and implied warranties of fitness of use for a particular purpose because each of the relevant contract documents "contained a conspicuous and thus effective disclaimer of all warranties, including that of fitness for a particular purpose").

## IV.    ACB'S COUNTERCLAIM FOR NEGLIGENT MISREPRESENTATION FAILS UNDER THE ECONOMIC LOSS RULE.

Under New York law, when damages allegedly sustained by a party are "properly characterized as 'economic loss'[,] they are not recoverable in an action for tort based upon negligent misrepresentation." *Gen. Elec. Co. v. A.C. Towne Corp.*, 534 N.Y.S.2d 283, 285 (N.Y. App. Div. 1988); *see also Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010) ("New York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence").

Here, ACB alleges Ardagh breached the Amended Agreement by applying an allegedly unsuitable ███████ and ███████ that ACB alleges did not conform to required Specifications, industry standards, or a container warranty cited in Section 20.4 of the Amended Agreement. (*See, e.g.*, Countercls. ¶¶ 55, 65, 75–94.) ACB claims also that Ardagh misrepresented to ACB that it was switching to a suitable ███████ and working with ACB to address "problems" that were occurring on ACB's production lines due to Ardagh's use of allegedly unsuitable ███████ or ███████ and Ardagh failed to impart correct information. (*See id.* ¶¶ 128–40.)

The "misrepresentations" that ACB alleges Ardagh made relate solely to the subject matter of the Amended Agreement, pursuant to which Ardagh was to provide ACB with beverage cans and can ends meeting the contractual Specifications. And the damages attributable to the alleged "misrepresentations" are virtually the same damages ACB alleges it suffered and would recover for its breach of contract claims.

For the breach of contract claims as to ███ and ██, ACB alleges it suffered from a "███ that caused *buildup, slowdown, shutdown and disruption on ACB's Filling Process lines*" (Countercls. ¶ 82) and "███████ that caused *buildup, slowdown, shutdown and disruption on ACB's Filling Process's lines*". (Countercls. ¶ 91) (emphasis added for comparison). The undisputed reality is the damage alleged was caused by the contracted-for product, which ACB alleges included a ██████ that caused buildup on its processing machines. The alleged misrepresentation is alleged only to have affected the same "Filling Process lines" as the result of the very same ████. (*See* Countercls. ¶ 138). ACB cannot recover for these purely economic losses, and this Court should dismiss Count VIII with prejudice. *See, e.g.*, *NewSpin Sports*, 910 F.3d at 308 (applying New York law, citing numerous similar cases, and affirming dismissal of a negligent misrepresentation claim under the economic loss doctrine); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citing similar cases and holding that "[u]nder New York law, the doctrine applies to claims for negligent misrepresentation, barring Plaintiffs' New York negligent misrepresentation claims"); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 609 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim under the economic loss doctrine where the plaintiffs were "sophisticated commercial parties who can bargain over what information [the defendant] must reveal and may then sue for breach of contract if such information is not provided"); *see also JoySuds, LLC v. N.V. Labs, Inc.*, No. 1:22-CV-03781, 2023 U.S. Dist. LEXIS 57095, 2023 WL 2744537, at *13 (S.D.N.Y. Mar. 31, 2023) (finding that "contentions that [the defendant] negligently mislabeled products, deviated from product specifications, and misrepresented its 'capacity and ability to decrease prices after its initial increase' . . . all stem from [the defendant's] obligations under the Supply Agreement" and "thus make up part of [the] claim that [the defendant] breached those contractual provisions").

## CONCLUSION

For the reasons set forth above, the Court should dismiss Counts IV–VIII of ACB's counterclaims with prejudice and without leave to amend, continue the time for Ardagh to answer the remaining counterclaims (Counts I–III) until after this Court has decided Ardagh's motion,[2] and grant Ardagh such other and further relief as the Court deems just and proper.

Respectfully submitted this the 26th day of June, 2023.

**Ardagh Metal Packaging USA Corp. f/k/a
Ardagh Metal Beverage USA Inc.,**

By:     /s/ Adam J. Glazer
Adam J. Glazer (IL ARDC No. 6199294)
Richard M. Goldwasser (IL ARDC No. 6205119)
**SCHOENBERG FINKEL BEEDERMAN BELL GLAZER,
LLC**
300 South Wacker Drive, #1500
Chicago, IL 60606
Telephone: (312) 648-2300
Facsimile: (312) 648-1212
Adam.Glazer@sfbbg.com
Richard.Goldwasser@sfbbg.com

James P. McLoughlin, Jr. (N.C. Bar No. 13795)
(*Pro Hac Vice anticipated*)
Christopher D. Tomlinson (N.C. Bar No. 38811)
(*Pro Hac Vice anticipated*)
Elena F. Mitchell (N.C. Bar No. 50883)
(*Pro Hac Vice anticipated*)
Joseph M. Piligian (N.C. State Bar No. 57533)
(*Pro Hac Vice anticipated*)
MOORE & VAN ALLEN PLLC

---

[2] While this Court previously has held that a party need not file an answer relating to claims unaddressed in a partial motion to dismiss while that partial motion to dismiss is pending, *see Oil Express Nat'l v. D'Alessandro*, 173 F.R.D. 219, 221 (N.D. Ill. 1997), out of an abundance of caution, Ardagh respectfully requests that the Court extend the time for Ardagh to answer Counts I–III until after this Court has decided its motion to dismiss certain of ACB's counterclaims. *See also, e.g.*, *Jupiter Aluminum Corp. v. Sabaitis*, No. 2:16-CV-30-RLM-PRC, 2016 U.S. Dist. LEXIS 34571, at *2 (N.D. Ind. Mar. 15, 2016) ("When a party files a partial motion to dismiss, the deadline for filing a responsive pleading regarding the unchallenged claims is automatically extended to fourteen days after the motion to dismiss is resolved.").

100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
jimmcloughlin@mvalaw.com
christomlinson@mvalaw.com
elenamitchell@mvalaw.com
joepiligian@mvalaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Adam J. Glazer, an attorney, certify that I served a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS CERTAIN COUNTERCLAIMS** upon the persons listed below by electronic transmission on this the 26th day of June, 2023.

> John T. Ruskusky (IL ARDC #6256605)
> jtruskusky@nixonpeabody.com
> Kathleen M. Mallon (IL ARDC #6336312)
> kmallon@nixonpeabody.com
> NIXON PEABODY LLP
> 70 W. Madison Street, Suite 5200
> Chicago, IL 60602-4378
> Telephone: (312) 977-4400
>
> Stephen M. LaRose (*pro hac vice admission*) (MA ARDC #654507)
> slarose@nixonpeabody.com
> NIXON PEABODY LLP
> Exchange Place, 53 State Street
> Boston, MA 02109-2835
> Telephone: (617) 345-1300

> /s/ Adam J. Glazer
> Adam J. Glazer

# **<u>Exhibit A</u>**

Exhibit A, page 1

Exhibit A, page 2

Exhibit A, page 3



Exhibit A, page 5



Exhibit A, page 6





Exhibit A, page 8

Exhibit A, page 9

Exhibit A, page 10



Exhibit A, page 12





Exhibit A, page 14



Exhibit A, page 16

Exhibit A, page 17

Exhibit A, page 18



Exhibit A, page 19



Exhibit A, page 20



Exhibit A, page 21

Exhibit A, page 22



Exhibit A, page 23



Exhibit A, page 24





Exhibit A, page 26

Exhibit A, page 27



Page 1 of 21

Exhibit A, page 28



Page 2 of 21

Exhibit A, page 29



Page 3 of 21

Exhibit A, page 30



Page 4 of 21

Exhibit A, page 31



Page 5 of 21

31



Page 6 of 21

Exhibit A, page 33



Page 7 of 21

Exhibit A, page 34



Page 8 of 21

Exhibit A, page 35



Page 9 of 21



Page 10 of 21

Exhibit A, page 37



Page 11 of 21

Exhibit A, page 38



Page 12 of 21

Exhibit A, page 39



Page 13 of 21



Page 14 of 21

Exhibit A, page 41



Page 15 of 21

Exhibit A, page 42



Page 16 of 21

Exhibit A, page 43





Page 18 of 21

Exhibit A, page 45



Page 19 of 21



Page 20 of 21

Exhibit A, page 47



Page 21 of 21

Exhibit A, page 48

Exhibit A, page 49



Page 1 of 18

Exhibit A, page 50



Page 2 of 18

Exhibit A, page 51



Page 3 of 18

Exhibit A, page 52



Page 4 of 18

Exhibit A, page 53



Page 5 of 18

Exhibit A, page 54



Page 6 of 18

Exhibit A, page 55



Page 7 of 18

Exhibit A, page 56



Page 8 of 18

Exhibit A, page 57



Page 9 of 18

Exhibit A, page 58



Page 10 of 18

Exhibit A, page 59



Page 11 of 18

Exhibit A, page 60



Page 12 of 18

Exhibit A, page 61



Page 13 of 18

Exhibit A, page 62



Exhibit A, page 63



Page 15 of 18

Exhibit A, page 64



Page 16 of 18

Exhibit A, page 65



Page 17 of 18



Page 18 of 18



Exhibit A, page 68



Exhibit A, page 69



Exhibit A, page 70



Exhibit A, page 71



Exhibit A, page 72

Exhibit A, page 73





Exhibit A, page 75



Exhibit A, page 76

███████████████████

███████

████████████████

██████████████████████

| ██████████ | | ██████████ | ████████████ | █████████████ |
|---|---|---|---|---|
| | | | | ███ |
| ████████████████ | | ██████ | ██████ | ██████ |
| ████████████████ | | ██████ | ██████ | ██████ |
| ████████████████ | | ████ | █████ | █████ |
| █████████████████ | | ████ | █████ | █████ |
| ██████████████ | | ████ | █████ | █████ |
| █████████████ | | ████ | █████ | █████ |

████████████████████████████

Exhibit A, page 78

Exhibit A, page 79



Exhibit A, page 80



Exhibit A, page 81

