IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARDAGH METAL PACKAGING USA CORP., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-07367 |
| v. | ) ) ) | Judge Jeremy C. Daniel |
| AMERICAN CRAFT BREWERY, LLC, | ) ) ) | Magistrate Judge Jeannice W. Appenteng |
| Defendant. | ) ) | |

## ORDER

Before the Court are defendant's motion to compel, Dkt. 144, plaintiff's motion to compel, Dkts. 158, 171, and certain discovery disputes raised in the parties' July 22, 2024 joint status report ("JSR"), Dkt. 183. Only July 23, 2024, the Court held a hearing to address the motions and the JSR. For the reasons set forth below and during the hearing, defendant's motion is denied and plaintiff's motion is granted in part and denied in part.

**I.    Defendant's Motion to Compel**

1. Defendant seeks to compel plaintiff's responses to defendant's Interrogatory No. 18, Topics 37–39 of defendant's Rule 30(b)(6) deposition notice, and RFP Nos. 99 and 100. These discovery requests all pertain to plaintiff's contracts with third parties that contain annual minimum volumes and (1) shortfall fees and penalties or (2) take-or-pay, rollover, or limitation of liability provisions. Defendant claims this information is relevant to the interpretation, meaning, and application of the Amended Agreement, as well as the parties' intent regarding certain provisions and terms of the Amended Agreement. Defendant also contends these contracts are relevant to its affirmative defenses, and will demonstrate the customs and business practices of plaintiff and the industry. The Court agrees with plaintiff that these requests are not relevant to any claim or defense.

2. Defendant states there was a significant downturn in the market for hard seltzer in 2021 resulting in a reduction of defendant's volume forecast. Defendant alleges that plaintiff "represented to [defendant] that it would work together with [defendant] to alleviate the impact of the downturn, that

[defendant] was not contractually obligated to purchase the total targets each particular year, and that [plaintiff] had flexibility with demand from other customers that would allow [p]laintiff to revise the targeted annual minimum volumes." Dkt. 144 at 12.[1] Defendant thus asserts the affirmative defenses of waiver, estoppel, and acquiescence and consent. *Id.* Defendant argues that plaintiff's "business transactions with third parties in similar circumstances may be relevant to prove the probable terms or meaning of terms of [the Amended Agreement]" by showing "a customary practice and course of dealing." *Id.* at 12–13 (quoting *Copeland Corp. v. Choice Fabricators, Inc.*, No. 3:04CV398, 2007 WL 9717680, at *1 (S.D. Ohio Apr. 6, 2007)). Specifically, defendant "seeks discovery relating to [plaintiff's] . . . custom or business practice of waiving or adjusting minimum volumes in 2021 . . . when the hard seltzer market declined precipitously and unexpectedly. *Id.* at 13. This discovery, according to defendant, is relevant to proving that plaintiff "engaged in a course of performance [with other suppliers] by which it waived its right to assert breach of contract claims . . . ." Dkt. 144 at 13.[2]

3. Defendant's arguments regarding waiver are unpersuasive. Waiver requires a party to prove that the other party purposefully abandoned a known right and "lull[ed] the [ ] party into a belief that strict compliance with a contractual duty" is not required, so as to relieve the party of the waived obligation. *See Kamco Supply Co. v. On the Right Track, LLC*, 149 A.D.3d 275, 280–81 (N.Y. App. Div. 2017).[3] Such abandonment "may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Gen. Motors Acceptance Corp. v. Clifton-Fine*

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header.

[2] Defendant also argues that discovery of third-party contracts is supported by the Uniform Commercial Code ("UCC"), which purportedly states that evidence on "course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance." U.C.C. § 2-208(3). However, Section 2-208 of the UCC was "deleted to conform to the 2001 Revision of Article 1 of the Code." U.C.C. § 2-208, at 76 (Thomson Reuters eds., 2023 ed.). But even if it were not, third-party contracts are not relevant to course of performance, which the UCC defines as "conduct *between the parties*." U.C.C. § 1-103(a) (emphasis added). And to the extent defendant relies on the concept of "course of dealing," it is likewise irrelevant, as the UCC defines "course of dealing" as "conduct concerning previous transactions *between the parties*." U.C.C. § 1-103(b) (emphasis added).

[3] In cases premised on diversity jurisdiction, such as here, affirmative defenses are examined with reference to state law. *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006). As the District Judge acknowledged, Dkt. 100 at 6, both parties agree that the Amended Agreement, and therefore defendant's affirmative defenses, are governed by New York law.

*Cent. School Dist.*, 85 N.Y.2d 232, 236 (1995). Further, "any waiver by plaintiffs with respect to a separate contract or agreement cannot be imputed as a waiver" in the instant contract. *McGuire v. McGuire*, 197 A.D.3d 897, 902 (N.Y. App. Div. 2021). Defendant's waiver defense is based on plaintiff's alleged representations that it "had flexibility with demand from other customers that would allow [p]laintiff to revise the targeted annual minimum volumes," plaintiff's acceptance of reduced forecasts, and "engage[ment] in cooperative efforts with [defendant] to project additional volume in later years." Dkt. 144 at 12–13. Accordingly, relevant discovery concerns the representations (or lack thereof) that plaintiff made to defendant. Accordingly, the Court finds that plaintiff's contracts with third parties—especially when defendant was unaware of these contracts—are not relevant to defendant's waiver defense.

4. With respect to defendant's estoppel defense, estoppel requires both a representation by plaintiff and detrimental reliance by defendant. *See, e.g.*, *Solow Mgt. Corp. v. Arista Records, Inc.*, 41 A.D.3d 219, 220 (N.Y. App. Div. 2007). The representations that defendant alleges plaintiff made are noted above. Defendant makes no argument that it knew or relied on plaintiff's contracts or dealings with third parties, rendering these contracts and dealings irrelevant to defendant's estoppel defense.

5. Defendant also argues that evidence of plaintiff's practice and industry custom is relevant to defendant's mutual mistake defense. Dkt. 144 at 14. Mutual mistake occurs when the parties reach an agreement, but the written instrument does not express that agreement due to the error of both parties. *See Friedland Realty, Inc. v. 416 W, LLC*, 120 A.D.3d 1185, 1186 (N.Y. App. Div. 2014). Defendant alleges— without more—that, "at the Amended Agreement's execution," the parties held certain understandings "based on both parties' conduct during negotiations, as well as the parties' experience and customary practices in executing similar agreements." *Id.* Defendant's arguments are conclusory and do not explain how the discovery it seeks is relevant to the mutual mistake defense.

6. Next, defendant asserts that the concept of "usage of trade" is relevant to clarify ambiguous terms and supplement the terms of a contract. Dkt. 144 at 10 (citing U.C.C. § 1-303). Defendant's argument is conclusory. "Usage of trade" is evidence of a practice or method of dealing that is used so regularly that it would justify a party's expectation that it would be observed in a transaction. *See Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV679, 2009 WL 3585427, at *1 (W.D. Mich. Oct. 27, 2009). However, defendant neither identifies the ambiguous terms or supplementations this discovery would clarify, nor explains the practice or method of dealing it expected would be

3

        used in the transaction between plaintiff and defendant Accordingly defendant fails to show how the discovery it seeks is relevant.

7. Further, defendant argues that plaintiff's understanding of the Amended Agreement is revealed through plaintiff's use of certain language or clauses in *other* supply agreements. Dkt. 144 at 14–16. However, courts are reticent to compel parties to disclose contracts between a litigant and its other clients, holding that third-party contracts are irrelevant and not discoverable in breach of contract claims when the issue is the parties' intent. *See, e.g.*, *World Wrestling Fed'n Entm't, Inc. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (affirming magistrate judge's denial of discovery of third-party contract, recognizing that "[o]rdinarily, what is relevant in a breach of contract claim is the transaction between the parties to the contract" and that "contractual agreements between one of the contracting parties and third parties is irrelevant."); *Mid-American Salt, LLC v. Bob & Dave's Lawn & Landscape Maint., Inc.*, No. 1:16-CV-285-HAB, 2020 WL 1181769, at *3 (N.D. Ind. Mar. 12, 2020) (denying motion to compel, finding that third-party dealings are irrelevant to understanding the intention of the parties); *BNSF Ry. Co. v. Panhandle N. R.R. LLC*, No. 4:16-cv-01061-O, 2018 WL 4076487, at *2–3 (N.D. Tex. Jan. 11, 2018) (denying motion to compel, holding that "third-party agreements and communications should not generally be discoverable" in breach of contract action). Further, the Court finds persuasive plaintiff's argument that "[c]ontracts with third parties, who differ in material ways from the party seeking discovery and who entered their contracts under different circumstances, . . . give rise to distinct, divergent contract language, meaning, and decisions about performance." Dkt. 169 at 7–8. Defendant has not shown how plaintiff's contracts with customers possessing a variety of business interests would inform plaintiff's understanding or intentions regarding the Amended Agreement.

8. Last, the Court finds the privacy interests of the third parties outweigh any potential benefit to defendant. *See* Fed. R. Civ. P. 26(b)(1) (the Court must weigh the proportionality of the sought discovery to the needs of the case). The third parties are defendant's competitors that have an interest in keeping their information private. Defendant has not convinced the Court that its purported need for the discovery overcomes this interest.

9. For all these reasons, and those stated during the hearing, defendant's motion to compel is denied.

## II. Plaintiff's Motion to Compel[4]

10. Plaintiff seeks to compel defendant to: (1) provide deposition testimony and produce documents relating to beverage sales, can purchasing forecasts, or plans impacting plaintiff's ability to avoid the consequences of defendant's alleged breach; and (2) make available a knowledgeable Rule 30(b)(6) deposition witness to testify about defendant's alleged damages from alleged issues with plaintiff's cans and defendant's efforts to mitigate those damages. Plaintiff's motion is granted in part and denied in part.

11. Plaintiff alleges defendant is withholding certain long-term forecasts indicating defendant's sales would be insufficient to meet the minimum amount defendant contracted to buy. Dkt. 171 at 5. Although defendant provided plaintiff with 12 to 18-month forecasts, plaintiff alleges that five-year forecasts would have shown defendant was going to "fall catastrophically short of its purchasing obligations." *Id.* Defendant does not deny it creates five-year strategic plans, but contends it produced these responsive forecasts for 2020 through 2023. Dkt. 176 at 8.

12. During the July 23, 2024 hearing, plaintiff admitted that it received the five-year strategic plans for 2020 through 2023, but is still seeking the five-year plan for 2024 and 12 to 18-month forecasts for 2024 and 2025, along with other documents supporting the forecasts. Defendant informed the Court that these plans and forecasts are made on a yearly basis in September or October; therefore, all historical information has been produced, but it cannot produce documents for 2024 or 2025 because they do not yet exist. The Court cannot compel defendant to produce documents that have already been disclosed, are not in its possession, custody, or control under Rule 34, or that otherwise do not exist. Fed. R. Civ. P. 34(a)(1); *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 3:08-CV-00490, 2010 WL 3119487, at *8 (N.D. Ind. Aug. 5, 2010) ("District courts routinely deny motions to compel the production of documents when the non-moving party represents that such documents do not exist."). Nonetheless, to confirm that all responsive documents to date have been produced, by 10/21/2024, defendant is directed to file a sworn certification confirming that no additional responsive documents are within its possession, custody, or control. However, this does not relieve defendant of its obligation under Rule 26(e), which requires supplemental disclosures or discovery responses even after discovery has closed. *See Epsicopo v. Gen. Motors Corp.*, No. 02 C 8675, 2004 WL 628243, at *7 (N.D. Ill. Mar. 29, 2004) (internal citation omitted); Fed. R. Civ. P. 26

---

[4] During the July 23, 2024 hearing, the parties informed the Court they had resolved the disputes concerning defendant's supposed commitments to Ball Corporation and defendant's alleged communications with certain equipment manufacturers about changes in defendant's filling and packaging lines. Thus, these issues are moot.

Advisory Committee Notes, 1993 Amendments, Subdivision (e) ("Supplementations . . . should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches."). Should defendant create any five-year strategic plan and/or 12 to 18-month forecasts responsive to plaintiff's requests for production after the close of fact discovery, it shall promptly produce those to plaintiff.

13. Plaintiff further argues that defendant should re-produce a Rule 30(b)(6) witness to testify on Topic Nos. 7, 33, and 34 about the forecasts, strategic plans, alleged damages defendant sustained from issues with plaintiff's cans, and defendant's efforts to mitigate those damages. Plaintiff contends that defendant's designated corporate representative, Eric Black, was unprepared to testify to these topics. Dkt. 171 at 5–6, 10–11.[5] Upon review of the transcripts submitted under seal, the Court agrees with plaintiff. Rule 30(b)(6) requires a corporation to designate a representative who can "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "A corporation in this scenario has an obligation to prepare an individual by having him or her review available materials or talk to others with knowledge." *Aldridge v. Lake Cnty. Sheriff's Off.*, No. 11 C 3041, 2012 WL 3023340, at *2 (N.D. Ill. July 24, 2012). The record indicates that Mr. Black did not review certain information and was not prepared to testify concerning Topic Nos. 7, 33, and 34. Therefore, defendant must either prepare Mr. Black to be re-deposed or designate and prepare a new Rule 30(b)(6) representative.

14. In defendant's response and the JSR, defendant argues it should be permitted to re-depose plaintiff's Rule 30(b)(6) Topic No. 15 witness, Mike MacGregor. Defendant states that plaintiff produced voluminous spreadsheets the night before Mr. MacGregor's deposition, which hindered defense counsel from meaningfully reviewing these materials prior to the deposition. Dkt. 175 at 15 n.10; Dkt. 183 at 3. As discussed at the July 23, 2024 hearing, defense counsel requested—during Mr. MacGregor's deposition—that the deposition remain open to inquire about these late-produced documents. Defendant renewed this request during a May 19, 2024 meet and confer. The Court finds defendant sufficiently preserved its request to keep Mr. MacGregor's deposition open to discuss Topic No. 15 and the late-produced spreadsheets. Thus, plaintiff shall make Mr. MacGregor available for another deposition.

---

[5] For documents filed under seal, the Court cites the sealed version while attempting to refrain from revealing any information that could be reasonably deemed confidential. Confidential information is discussed to the extent necessary to explain the path of the Court's reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010).

15. The Court allots each side 2 hours to complete these supplemental depositions. The scope of plaintiff's Rule 30(b)(6) deposition shall be limited to Topic Nos. 7, 33, and 34, and the scope of defendant's Rule 30(b)(6) deposition shall be limited to Topic No. 15 and the late-produced spreadsheets.

### III. Remaining Discovery Disputes

16. In the JSR, defendant states it wants plaintiff to fully respond to Request No. 54 by removing the redactions of plaintiff's customer names from its Sales Data Spreadsheet. Dkt. 183 at 1–3. At the July 23, 2024 hearing, the Court gave defendant the opportunity to explain why customer names were relevant to any claim or defense. Defendant responded that it needed to match the names with the data already provided to determine whether plaintiff mitigated its alleged damages. The Court finds that the disclosure of customer names alone adds nothing to defendant's mitigation arguments when it has the data regarding plaintiff's sale numbers. Therefore, plaintiff need not produce the names of its customers in response to Request No. 54, and defendant's request to further depose plaintiff's Rule 30(b)(6) witnesses on Topic No. 41 is denied.

17. Defendant also seeks to re-depose Mr. MacGregor and Robert Sladewski, another plaintiff Rule 30(b)(6) witness, on Topic Nos. 27, 29, 30, 35, 41, and 59, because plaintiff redacted certain documents that were then unredacted after the depositions. Dkt. 175 at 15; Dkt. 183 at 4–5. Defendant claims that due to the redactions, these witnesses could not answer questions within the scope of these topics. *Id.* However, defendant has not shown (1) how the redactions prevented Mr. MacGregor or Mr. Sladewski from fully answering questions; (2) that their testimony would now change with the unredacted information; or (3) that more testimony would lead to new information. Further, defendant possessed the redacted documents in advance of the depositions and did not object to the redactions or request the documents be unredacted before or during the depositions. Moreover, plaintiff produced the unredacted documents "on the understanding that [defendant] would not recall [plaintiff] witnesses for additional deposition time." Dkt. 183 at 5. Accordingly, defendant's request to re-depose Mr. MacGregor and Mr. Sladewski regarding Topic Nos. 27, 29, 30, 25 41, and 59 is denied.

18. Lastly, the parties shall meet and confer on defendant's Request Nos. 1, 27, 29, 35, 45, 46, 47, and 76. The Court encourages the parties to resolve any issues without court intervention. Should a dispute remain, the parties shall raise it with the Court by 10/28/2024 in a joint status report in chart form, with each row containing the disputed discovery request (or a description thereof), defendant's position, and plaintiff's position. The parties shall note that the chart is not meant to serve as or substitute for full briefing of the

disputed issues. Each party's position shall be set forth in a brief, concise manner, and no more than two to three sentences. In any event, and given the Court's ruling above, by 10/28/2024, the parties shall file a joint status report setting forth what additional discovery has been completed, what discovery remains (including the schedule for any remaining depositions), and a reasonable proposal for the close of fact discovery and expert deadlines.

**So Ordered.**

**Jeannice W. Appenteng**
**United States Magistrate Judge**