**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ARDAGH METAL PACKAGING USA CORP., | |
| Plaintiff, | Case No. 1:22-cv-07367 (JCD) (JA) |
| v. | |
| AMERICAN CRAFT BREWERY LLC, | |
| Defendant. | |

**CERTIFICATION OF JOHN T. RUSKUSKY
ON BEHALF OF AMERICAN CRAFT BREWERY LLC**

Pursuant to 28 U.S.C. § 1746, I, John T. Ruskusky, certify as follows:

1.      I am an adult resident of the State of Illinois. I am a partner at the law firm Nixon Peabody LLP, and am lead counsel for Defendant American Craft Brewery LLC ("ACB") in the above-captioned matter.

2.      I submit this Certification on behalf of ACB pursuant to Section II of the Court's December 6, 2024 Order. (ECF No. 237 at 1–2, § 2.)

3.      I have personal knowledge of the matters set forth in this Certification, and, if sworn as a witness, could testify competently thereto.

4.      On November 22, 2024, Ardagh moved the Court for an order compelling ACB to provide a further supplemental response to Ardagh's Interrogatory No. 13, describing "changes ACB made to the machinery and operational settings of can filling and packaging lines and equipment that have run or currently run cans supplied by Ardagh, including changes made to line or conveyor speed and synchronization with the rest of the line, lane width and height, and processing volume." (ECF Nos. 226, 229 at 7.)

1

5. As ACB's counsel informed counsel for Ardagh prior to that filing, including in a November 5, 2024 meet and confer: (i) ACB has no data to show physical changes to lines including lane height and width; (ii) any changes to the settings on the cartoners/multipackers on the relevant lines overwrite prior settings, such that there is no way to recreate prior settings from any particular time; and (iii) there is no historical information stored in MES system regarding any settings changes.

6. As Ardagh also knows and was reminded in meet and confer correspondence and calls, ACB's Rule 30(b)(6) corporate representatives previously testified about the MBS systems added to two lines and any additional changes made to the relevant lines, including that the only additional physical changes to lane width and height on the lines during the relevant timeframe were during planned changeovers between cans sizes, which affects the rail width and height at the cartoners/multipackers. (*See, e.g.*, 4/17/2024 William Soehnlen Deposition Tr. at 54:24–57:21 ("Have there been any changes in the equipment, specifically in the Douglas Spectrum Cartoner, since it was installed? A. Mechanical changes? Q. Yes. A. No. . . . Q. Okay. Apart from the CIL process, have there been any changes in the operating processes for the cartoner? A. The only change is when we transition from 12-ounce standard to sleek. It's the machine settings that are changed based on the can size. . . ." [and providing further detail]); 4/24/2024 Dylan Reiners Deposition Tr. at 73:4-12 ("Q. Okay. Is -- I guess, what about when standard cans are being run on those lines, does it also still narrow down to the same width at the cartoner rails? A. So it's the -- it's based on the changeover procedure in which you would have different -- different tooling set up in that cartoner, so that would be set up back to the width of a standard can."). Mr. Reiners also identified an additional April 2024 change to the rails between the MBS system and the cartoner on the Cincinnati line to expand them to standard-size can width. (*Id.* at 68:2–68:23; 73:13–19.)

7.      As discussed at the December 6, 2024 status hearing before the Court, in advance of the hearing ACB continued to explore whether any additional historical settings data could be located. While historical settings information is not saved at the equipment and programmable logic controllers ("PLCs") on the lines—for example at the cartoner/multipacker—*programming changes* made at the PLCs are logged in the AssetCentre software utilized by ACB. Such logs, however, reflect only computer programming changes, not "settings" changes or mechanical changes, and thus may not be fully comprehensive, do not explain *why* any particular changes were made, and do not show a line's operational settings at any particular time.

8.      Pursuant to the Court's December 6, 2024 Order (ECF No. 237 at 1–2, § 2), ACB ran reports potentially responsive to Plaintiff's requests for "changes made to line or conveyor speed and synchronization with the rest of the line, lane width and height, and processing volume." ACB's counsel informed Ardagh's counsel on December 19, 2024 that it would run reports reflecting logged programming changes at the relevant PLCs referencing the following terms: speed, height, width, distance, diameter, product, and/or product_diameter.[1] (Ex. A (12/19/2024 D. Pattee E-Mail).)

9.      Specifically, ACB searched for any programming changes made: (1) at the line control PLCs (for lines 51, X, and Y at SAPB and Line 2 at SACB) associated with the term "speed"; and (2) at the cartoner and multipacker PLCs (on lines 51, X, and Y at SAPB and Line 2 at SACB) associated with the terms "speed", "height", "width", "distance", "diameter", "product", and/or "product_diameter". The reports were not limited by time period. If the particular search did not yield any results, no report was generated.

---

[1] In addition to focusing the voluminous log reports to information actually responsive to Ardagh's requests, utilizing limiting terms is necessary because the AssetCentre software cannot generate log reports reflecting more than 5,000 entries.

10.     On Monday, December 23, 2024, the resulting reports consisting of approximately 4,000 pages (ACB_0033293–ACB_37263) were produced to Ardagh.

11.     While the produced reports should capture any available information arguably responsive to Ardagh's request for "changes made to line or conveyor speed and synchronization with the rest of the line, lane width and height, and processing volume," ACB has invited Ardagh to propose any additional search terms for these log reports, including in a December 19, 2024 meet-and-confer teleconference, a January 7, 2025 meet-and-confer teleconference, and in a January 8, 2025 e-mail. Ardagh has not proposed any additional search terms.

12.     Other than the information already provided in response to Ardagh's Interrogatory No. 13, disclosed by ACB's witnesses during depositions, and otherwise reflected in documents produced to Ardagh, including the log reports produced pursuant to the Court's December 6, 2024 Order, ACB is not aware of additional information responsive to Ardagh's request.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2025

*/s/ John T. Ruskusky*
John T. Ruskusky
Attorney for American Craft Brewery LLC

# EXHIBIT A

| | |
|---|---|
| **From:** | Pattee, David |
| **Sent:** | Thursday, December 19, 2024 1:41 PM |
| **To:** | 'Elena Mitchell' |
| **Cc:** | Ruskusky, John; LaRose, Stephen; Mallon, Kathleen; Jim McLoughlin; Chris Tomlinson; Ben Shook; Drew Newman; Lexi Narducci; Adam J. Glazer; Richard Goldwasser |
| **Subject:** | RE: Ardagh v. ACB - Reports re: Machine Changes |

Elena,

The reports referenced during the hearing and that are the subject of the Court's order (ECF No. 236) are logs of changes at the line PLCs (programmable logic controllers) that are recorded in AssetCentre software. Pursuant to the Court's order and Ardagh's request for changes relating to "line or conveyor speed and synchronization with the rest of the line, lane width and height, and processing volume," Boston Beer is running reports reflecting any logged changes referencing any of the following terms: Speed, Height, Width, Distance, Diameter, Product, Product_Diameter.

ACB will produce these reports no later than 1/10/25 pursuant to the Court's order.

Thanks,
Dave



**David M. Pattee**
**Counsel**
dmpattee@nixonpeabody.com
T/ +1 312.977.4453  M/ +1 219.669.0683  F/ +1 844.562.7995

Nixon Peabody LLP
70 West Madison, Suite 5200, Chicago, IL 60602-4378
LinkedIn | Subscribe

This email message and any attachments are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you are not an intended recipient, please notify the sender immediately and delete the message from your email system. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful. Thank you.

**From:** Elena Mitchell <elenamitchell@mvalaw.com>
**Sent:** Tuesday, December 17, 2024 8:33 PM
**To:** Ruskusky, John <jtruskusky@nixonpeabody.com>; LaRose, Stephen <SLAROSE@nixonpeabody.com>; Pattee, David <dmpattee@nixonpeabody.com>; Mallon, Kathleen <kmallon@nixonpeabody.com>
**Cc:** Jim McLoughlin <jimmcloughlin@mvalaw.com>; Chris Tomlinson <tomlinsonc@mvalaw.com>; Ben Shook <benshook@mvalaw.com>; Drew Newman <drewnewman@mvalaw.com>; Lexi Narducci <alexisnarducci@mvalaw.com>; Adam J. Glazer <Adam.Glazer@sfbbg.com>; Richard Goldwasser <Richard.Goldwasser@sfbbg.com>
**Subject:** Ardagh v. ACB - Reports re: Machine Changes

**[EXTERNAL E-MAIL]**
Be Aware of Links and Attachments

John,

In accordance with ECF No. 236, please provide dates and time options when we can meet and confer this week regarding, as to both machinery and operational setting changes, "what information regarding machine changes can be captured in reports." We would like to discuss before Friday, so please provide options for tomorrow (Wednesday) and Thursday.

Additionally, in advance of the meet and confer, and so that we can have a more efficient meet and confer, please: (1) let us know what information regarding machine changes can be captured in reports; (2) provide confirmation that related reports will be produced as soon as possible, and in no event later than 1/10/25 (as ordered by ECF No. 236); and (3) advise what information regarding machine changes cannot be captured in reports, and why.

Thank you,

**Elena F. Mitchell**
Pronouns: she/her/hers
Associate
T 704.331.3671
F 704.409.5696
elenamitchell@mvalaw.com

_____

**Moore&VanAllen**

100 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003
704.331.1000
www.mvalaw.com

CONFIDENTIAL & PRIVILEGED Unless otherwise indicated or obvious from the nature of the following communication, the information contained herein is attorney-client privileged and confidential information/work product. The communication is intended for the use of the individual or entity named above. If the reader of this transmission is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies, electronic, paper or otherwise, which you may have of this communication. Thank You.

**Moore & Van Allen**

## <u>CERTIFICATE OF SERVICE</u>

I, John T. Ruskusky, an attorney, certify that on January 10, 2025, I caused a copy of the foregoing to be served on Plaintiff's counsel, at the email addresses listed on the Court's most recent ECF-notification issued in this case, using the electronic case filing system of the court.

*/s/ John T. Ruskusky*
John T. Ruskusky