# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARDAGH METAL PACKAGING USA CORP. F/K/A ARDAGH METAL BEVERAGE USA INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No: 1:22-cv-07367 (JCD) (JA) ) |
| AMERICAN CRAFT BREWERY, LLC D/B/A VARIOUS BOSTON BEER BREWERIES, | ) ) ) ) |
| Defendant. | ) |

## JOINT STATUS REPORT

In accordance with the Court's December 10, 2024, Minute Entry directing the parties to report on expert discovery, indicating what discovery has been completed, what discovery remains, and whether any discovery disputes require the Court's attention (Dkt. No. 241), the parties jointly submit this joint status report.

## RECENT CASE UPDATES

1. In accordance with the Court's December 10, 2024, Minute Entry (Dkt. No. 241), the parties exchanged initial expert reports on Friday, January 17, 2025; plan to exchange rebuttal expert reports by Friday, March 21, 2025; and plan to complete expert depositions by Friday, April 18, 2025.

2. Additionally, as explained below and contemplated by the Court's December 10, 2024, Minute Entry (*see id.* ("If any fact discovery disputes are still pending when initial expert reports are due, the parties shall nevertheless continue with expert discovery as scheduled")), outstanding fact discovery issues remain between the parties. However, the parties are continuing to conduct expert discovery as scheduled.

3. On December 6, 2024, the Court held a telephonic hearing regarding numerous discovery disputes raised by the parties. Later that day, the Court ordered that: (i) the parties file a joint status report by December 10, 2024, outlining each side's position as to whether Ardagh should be given an additional hour to depose ACB's 30(b)(6) designee on Ardagh's Topic 33; (ii) ACB file any motions to compel limited to requests identified in Paragraph 9 of Dkt. No. 232 by December 10, 2024; (iii) Ardagh provide certain anonymized customer information; and (iv) ACB produce certain machinery and equipment programming change reports discussed at the December 6 hearing and file a sworn certification identifying information it cannot provide responsive to Ardagh's Interrogatory 13 by Friday, January 10, 2025. (Dkt. Nos. 236 and 237.)

4. On December 10, 2024, the parties filed the joint status report outlining each side's position as to whether Ardagh should be given an additional hour to depose ACB's 30(b)(6) designee on Ardagh's Topic 33. (Dkt. No. 240.) The Court has not yet ruled on whether Ardagh should be given the additional hour of deposition time.

5. On December 10, 2024, ACB moved the Court to compel Ardagh to produce certain documents and to supplement Ardagh's responses to certain requests for admission, or to otherwise deem Ardagh's responses to certain requests for admission admitted. (Dkt. No. 242.) On December 13, 2024, Ardagh filed its response to ACB's motion to compel. (Dkt No. 250.) On December 23, 2024, with the Court's leave (*see* Dkt. No. 258), ACB filed a reply in support of its motion to compel. (Dkt. No. 259.)

**ACB ISSUES**

6. As noted above, the parties exchanged expert reports this past Friday. ACB takes the position that Ardagh's expert report of Andrew D. Richmond raises questions about Ardagh's statements in its response to ACB's December 10, 2024 Motion to Compel, which sought, among

2

other things, Ardagh's yearly earnings, operating, or profit and loss statements for each of Ardagh's plants. (Dkt. No. 242, at 11–12). In Ardagh's Response to ACB's Motion to Compel, Ardagh represents that it "does not maintain separate earnings, operating, or profit loss statements by facility," and that "[t]his information is tracked and maintained across Ardagh's entire enterprise—it is not by plant." (Dkt No. 249, at 12). In its expert's report, however, Ardagh admits that it tracks the costs of performance of its production facilities. (1/17/25 Richmond Expert Report, ¶¶ 55, 57).[1] As noted in its Motion to Compel (Dkt No. 242), ACB continues to seek Ardagh's tracking of earnings, operating costs, and profit loss statements at each of its facilities.

7. Counsel for Ardagh notes that counsel for ACB did not bring the above issue to their attention until approximately 5:25pm ET on January 21, 2025, when counsel for ACB sent proposed edits to the draft joint status report. However, the statements made in response to ACB's Motion to Compel are entirely consistent with the Richmond report served on Friday and counsel for Ardagh invites counsel for ACB to propose dates and times to meet and confer so that the matter can be discussed.

8. On December 31, 2024, Ardagh produced certain anonymized customer information in response to the Court's December 6 Orders. Counsel for ACB has raised certain questions about this production both in writing and in a telephonic meet and confer. On January 20, 2025, counsel for Ardagh responded to one of these questions ACB will continue its efforts to meet and confer with Ardagh about its continuing questions, including through correspondence sent on January 21, 2025.

---

[1] Ardagh has designed the report as Confidential and ACB will separately file these pages from the expert report later this week after conferring with Ardagh about sealing.

9. Counsel for Ardagh, on the other hand, believes they have addressed all of counsel for ACB's questions relating to certain anonymized customer information produced in response to the Court's December 6 Orders, but will continue to work, in good faith, with counsel for ACB to clarify and resolve any remaining issues.

**ARDAGH ISSUES**

10. On December 23, 2024, ACB produced certain equipment programming change reports and on January 10, 2025, ACB's counsel filed a certification regarding ACB's generation and production of these reports, as well as the unavailability of certain information requested by Ardagh. (Dkt. No. 268.) Ardagh's position is that – as footnote 1 of the certification makes clear, and as discussed between counsel for the parties on a meet and confer on January 7, 2025 – ACB can run reports showing *all* setting changes made to ACB's lines over the relevant period, 5,000 changes at a time, which reports ACB is refusing to produce. Following the meet and confer, Ardagh requested again that ACB run and produce reports showing *all* setting changes made to ACB's lines over the relevant period as there is no basis for ACB not doing so, but ACB has indicated that it will not produce reports showing the additional settings changes. At this point, the parties are at an impasse on this issue, and Ardagh respectfully requests that ACB be required to produce reports showing all settings changes.

11. ACB states in response that it has generated and produced approximately 4,000 pages of the programming change log reports discussed at the December 6, 2024 hearing to capture any available information arguably responsive to Ardagh's requests, which process and reports are discussed in detail in the January 10, 2025 certification on behalf of ACB. (Dkt. No. 268.) As noted therein, ACB has further invited Ardagh on multiple occasions, including on December 19, 2024, and January 7, 8, and 17, 2025, to propose any additional search terms it believes are

4

necessary to generate any further programming-change reports that it believes would be relevant. To date, Ardagh has not proposed any additional parameters, instead insisting only that ACB should generate 5,000-entry reports until *all* programming changes have been captured, regardless of volume, burden, or whether such programming changes are at all responsive to Ardagh's requests or relevant to the issues in dispute. ACB has not agreed to generate such reports beyond the voluminous reports already produced, which already encompass logged programming changes referencing pertinent terms (speed, height, width, distance, diameter, product, product_diameter).

12. Also, on November 25, 2024 – the day before the close of fact discovery – ACB supplemented its Rule 26(a)(1) Initial Disclosures, newly identifying ACB employees Kevin Grady and Phil Hodges as individuals likely to have discoverable information that ACB may use to support its claims or defenses. The parties also have met and conferred on this issue but, so far, have been unable to reach a resolution. More specifically, Ardagh has requested that ACB either: (i) confirm that neither Mr. Grady nor Mr. Hodges will be called at trial; or (ii) allow Ardagh to take the depositions of these ACB employees. As of today's date, however, counsel for ACB has refused to confirm that neither Mr. Grady nor Mr. Hodges will be called at trial, or that that ACB will agree to the depositions. Ardagh, therefore, respectfully requests an opportunity (either by hearing or by filing) to move the Court to compel ACB to make Mr. Grady and Mr. Hodges available for depositions. ACB's untimely supplemental disclosures deprived Ardagh of the opportunity to take Kevin Grady's and Phil Hodges's depositions. Because ACB waited too long to supplement its discovery, it is proper for the court to allow Ardagh time to depose the witnesses or the Court should exclude the witnesses.

13. ACB responds that it has responded to Ardagh's untimely request during a meet and confer call and in a January 17, 2025 email. Specifically, ACB reminded Ardagh that Ardagh

(not ACB) first identified Mr. Hodges in its supplemental disclosures on September 18, 2024 (and he was well known before this date also). Ardagh made no request to take his deposition during the remaining two months of the fact discovery period, and also has taken the position that the fact discovery period is closed other than for pending requests. Similarly, Ardagh did not raise this request in response to the Court's prior instructions to identify any discovery matters including in the October 28, November 15, November 22, November 25, December 2, December 9, or December 10 status reports. ACB listing Mr. Hodges in its disclosures is not a proper basis for Ardagh's belated request. The same is true for Mr. Grady who has been well known throughout and discussed extensively in depositions last Spring. Thus, Ardagh has no proper basis to seek their depositions after the close of fact discovery.

14. Additionally, Ardagh raises two issues with the Court regarding ACB's failure to: (i) confirm that ACB has produced all documents relating to ACB's qualification and trialing of Ardagh cans (which confirmation was requested given ACB's recent and belated production of additional qualification and trialing documents on November 25, 2024); and (ii) produce the calendar of Charles James ("Jim") Koch, ACB's Chairman (given his deposition testimony, including from July 2024, that he kept a calendar that would note when he would have visited ACB's breweries relating to buildup, as ACB still has failed to identify the particular days and times that its breweries experienced buildup). The parties are continuing to discuss these issues, but Ardagh may seek an opportunity to move to compel such discovery from ACB in the near future.

15. ACB responds that these issues were raised via letters to ACB on Tuesday afternoon (January 21, 2025), and that ACB will separately respond to Ardagh's belated requests. The first (can qualifications) was raised for the first time via email on December 11, 2024 and had

6

not been discussed since December 16, 2024, when ACB responded that it believed the issue had already been fully addressed, including by ACB's November 7, 2024 responses to Ardagh's voluminous requests for admission regarding qualifications, and its November 25, 2025 production of documents in response to a related Ardagh request for production. The second (Mr. Koch's calendar) has never been previously raised by Ardagh despite the fact that Mr. Koch was first deposed and discussed the aforementioned visit(s) in May 2024.

**ONE THIRD-PARTY ISSUE**

16. On December 31, 2024, the Court granted Ball Corporation an opportunity to respond by January 22, 2025, to challenges to confidentiality designations asserted by Ardagh. (Dkt. No. 265.) As required by Dkt. No. 265, Ardagh provided Ball Corporation on January 6, 2024, with the governing confidentiality order in this case (Dkt. No. 167), relevant briefs (Dkt. Nos. 185 and 190), and the Court's related Order (Dkt. No. 265). On January 21, 2025, Ball filed its response to Ardagh's confidentiality designation challenges. (Dkt. No. 270.)

**Attorneys for Plaintiff:**

/s/ Richard M. Goldwasser
Adam J. Glazer (local counsel) (IL ARDC No. 6199294)
adam.glazer@sfbbg.com
Richard M. Goldwasser (local counsel) (IL ARDC No. 6205119)
richard.goldwasser@sfbbg.com
SCHOENBERG FINKEL BEEDERMAN BELL GLAZER, LLC
300 South Wacker Drive, #1500
Chicago, IL 60606
Telephone: (312) 648-2300

James P. McLoughlin, Jr. (lead trial attorney) (*pro hac vice admission*)
jimmcloughlin@mvalaw.com
Christopher D. Tomlinson (lead trial attorney) (*pro hac vice admission*)
christomlinson@mvalaw.com
Benjamin E. Shook (*pro hac vice admission*)
benshook@mvalaw.com

Elena F. Mitchell (*pro hac vice admission*)
elenamitchell@mvalaw.com
Drew P. Newman (*pro hac vice admission*)
drewnewman@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: (704) 331-1000

**Attorneys for Defendants:**

/s/ John T. Ruskusky
John T. Ruskusky (IL ARDC #6256605) (lead trial attorney)
jtruskusky@nixonpeabody.com
Kathleen M. Mallon (IL ARDC #6336312)
kmallon@nixpeabody.com
David M. Pattee (IL ARDC #6317265)
dmpattee@nixonpeabody.com
NIXON PEABODY LLP
70 W. Madison Street, Suite 5200
Chicago, Illinois 60602
Telephone: (312) 977-4440

Stephen M. LaRose (*pro hac vice admission*) (MA ARDC #654507) (lead trial attorney)
slarose@nixonpeabody.com
NIXON PEABODY LLP
Exchange Place, 53 State Street
Boston, Massachusetts 02109
Telephone: (617) 345-1000