**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARDAGH METAL PACKAGING USA CORP., | ) ) | |
| | ) | Case No. 22-cv-07367 |
| Plaintiff, | ) ) | |
| | ) | Judge Jeremy C. Daniel |
| v. | ) ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| AMERICAN CRAFT BREWERY, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant's motion to compel, Dkt. 242, and plaintiff's

motion to compel, Dkts. 299, 300. For the reasons set forth below, defendant's

motion is granted in part and denied in part, and plaintiff's motion is denied.

**I.      Background**

Plaintiff Ardagh Metal Packaging USA Corp. ("Ardagh") and Defendant

American Craft Brewery, LLC ("ACB") entered into a contract, effective January 1,

2020, for the purchase of beverage cans. Plaintiff filed suit in December 2022,

alleging defendant breached its contractual obligations to purchase minimum-can

volumes and failed to provide reasonable assurances of future performance.

Defendant filed counterclaims for breach of contract, alleging plaintiff failed to use

tiered pricing and used unsuitable materials to manufacture its cans.

Fact discovery began in May 2023 and was set to close in February 2024. Dkt.

29. After multiple extensions, the fact discovery deadline was last reset to

November 25, 2025. Dkt. 209. Shorly before the deadline, the parties raised

multiple discovery disputes, and the Court held a hearing on December 6, 2025.

During the hearing, the Court resolved some of the issues identified but required

additional briefing on others, granting defendant leave to file a motion to compel.

Dkt. 237. Defendant filed the instant motion, Dkt. 242, and plaintiff responded

shortly thereafter, Dkt. 249.[1] While defendant's motion was pending, plaintiff

requested leave to file its own motion to compel. Dkt. 283. The Court granted the

motion in part, limiting its scope, and plaintiff filed its motion. Dkt. 300. Defendant

later responded, Dkt. 303, and the parties filed a joint supplement at the Court's

direction, Dkt. 334.

## II.    Legal Standard

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense

and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Motorola*

*Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019)

("Relevance focuses on the claims and defenses in the case, not its general subject

matter."). A party may compel discovery under Rule 37 whenever another party

fails to respond to a discovery request, or when its response is insufficient. Fed. R.

Civ. P. 37(a). In the context of requests for admission, a party may move the Court

---

[1] The Court cites to the publicly-available material whenever possible. For documents filed under seal, confidential information is discussed to the extent necessary to explain the Court's reasoning. *See Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining "portions of discovery that are filed and form the basis of judicial action must eventually be released").

for a ruling on the sufficiency of an answer or objection, and the Court may deem the matter admitted or order the responding party to amend its answer. Fed R. Civ. P. 36(a)(6); *Buchanan v. Chicago Transit Auth.*, No. 16-CV-4577, 2016 WL 7116591, at *3 (N.D. Ill. Dec. 7, 2016).

Courts have "extremely broad discretion" in controlling discovery, *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013), and resolving discovery disputes, *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 785 (7th Cir. 2013). The party moving to compel discovery bears the initial burden to establish a request's relevance, then the burden shifts to the objecting party to show why the request is improper. *See Mendez v. City of Chicago*, No. 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020).

III.    **Defendant's Motion to Compel**

A.      **EBITDA Documents, RFP No. 136**

RFP No. 136 asks plaintiff to produce documents sufficient to show plaintiff's total EBITDA (earnings before interest, taxes, depreciation, and amortization) each year from 2021 until 2025. Dkt. 242-1 at 17. Defendant argues the requested documents are relevant because plaintiff's initial disclosures described its damages "as measured by calculating Ardagh's [EBITDA] as a result of ACB's failure to purchase the requisite Annual Minimum Volumes," pursuant to N.Y. CLS UCC § 2-708. Dkt. 242-2 at 9-10. Defendant also highlights a deposition in which the deponent mused that plaintiff's alleged damages reflected [x percent] of plaintiff's total EBITDA. In defendant's view, it must have access to documents reflecting

3

plaintiff's total yearly EBITDA to challenge the deponent's calculations and plaintiff's alleged damages. Dkt. 242 at 3-4.

Plaintiff argues RFP No. 136 is premised on a misinterpretation of its damages theory. Dkt. 249 at 4. Rather than seeking a portion of its total EBITDA, plaintiff maintains it is seeking damages caused by defendant's failure to purchase can volumes (calculated by multiplying the contract price by the volumes defendant contracted for, and subtracting the cost of plaintiff's performance). Plaintiff represents that it has already produced documents supporting this calculation, including volume sales data, contract pricing, and manufacturing costs for each year. *Id.* at 5. Finally, plaintiff clarifies that testimony about how the damages compare to plaintiff's total EBITDA is a "random calculation" and not relevant to the damages calculation itself. *Id.* at 4.

The Court finds plaintiff's total EBITDA is not relevant to any claim or defense, and so it will not compel production in response to RFP No. 136. Although plaintiff mentioned EBITDA in its initial disclosures, plaintiff did not suggest its damages were calculated as a percentage of its total EBITDA. Instead, plaintiff stated it was pursuing damages under UCC § 2-708, which measures damages based on contract price, market price, and performance cost. This is consistent with plaintiff's explanation of the damages' calculation in response to defendant's motion. Further, testimony about plaintiff's total EBITDA alone does not make documents supportive of that testimony relevant or discoverable. Accordingly, the motion as to RFP No. 136 is denied.

4

### B.      Capacity-Related Documents

#### i.      RFP Nos. 108-111

RFP Nos. 108-110 ask for documents sufficient to show, by month and facility, plaintiff's total manufacturing capacity for three different can types and associated can ends from 2021 through 2025. Dkt. 242-1 at 3-5. RFP No. 111 asks for documents sufficient to show, by month and facility, plaintiff's forecasted or planned use of its manufacturing lines during the same time period. *Id.* Defendant argues that plaintiff's production so far is not sufficient to show actual total capacity. Dkt. 242 at 5; Dkt. 259 at 2-3. Plaintiff contends it has produced all responsive documents that demonstrate its capacity, including actual production figures, curtailment summaries, and monthly line load reports that reflect production volume and operational efficiency at each plant. Dkt. 249 at 5-6. Plaintiff argues that defendant "imagines and seeks a document that does not exist." *Id.* at 5.

The Court cannot compel plaintiff to produce documents that have already been disclosed and that are not in its possession, custody, or control, or that otherwise do not exist. Fed. R. Civ. P. 34(a)(1); *Luxottica Group S.p.A. v. Yiwu Cjia Trade Co.*, No. 22 CV 1140, 2023 WL 6520213, at *2 (N.D. Ill. Oct. 5, 2023). Aside from conclusory statements that plaintiff's production is insufficient, defendant does not explain or describe what additional documents it seeks. Defendant also fails to articulate a basis to believe plaintiff has not produced everything in its possession, custody, or control.[2] Accordingly, defendant's motion as to RFP Nos. 108-11 is

---

[2] Defendant filed a supplement, arguing plaintiff's expert report demonstrates that plaintiff has capacity documents it has not produced. Dkt. 275. The Court disagrees. The attached

denied. *Mendez v. City of Chicago*, No. 18-CV-6313, 2020 WL 4736399, at *8 (N.D.

Ill. Aug. 14, 2020) (denying motion to compel when moving party does not cite a

reason to believe production incomplete). Nevertheless, to confirm that plaintiff has

produced all responsive documents, plaintiff is directed to file a sworn certification

confirming that no additional responsive documents are within their possession,

custody, or control. Plaintiff shall file a sworn certification by June 24, 2025.

### ii. RFA Nos. 475-92

Defendant's 17 capacity-related requests to admit are drafted as follows:

> Admit that if ACB had purchased [x number] of [y-type cans] in [z year],
> Ardagh would not have had the capacity to fulfill the [y-type can] orders
> of any additional customers (beyond Ardagh's already-existing
> customers) without expenditures and overheard expenses beyond those
> that Ardagh would have incurred to supply ACB.

Dkt. 242-5 at 20-25. Plaintiff objected to each request. Defendant argues the RFAs

should be deemed admitted because plaintiff's objections are not warranted, and the

RFAs "ask the precise question that [plaintiff] is required to prove to obtain § 2-

708(2) damages." Dkt. 242 at 6. Plaintiff argues the requests are improper

hypothetical questions that fall outside the scope of Rule 36. Dkt. 249 at 7-8. The

Court agrees.

Defendant asks plaintiff to opine whether it would have had capacity to fulfill

certain orders depending on a number of variables—this is precisely the type of

hypothetical request that courts do not permit because the requests are not

---

expert report cites to evidence already produced and does not indicate documents have been
withheld. The expert's statement that plaintiff plans production based in part on capacity
does not itself mean that plaintiff has dedicated "capacity and planning documents."

6

connected to the facts of the case. *Buchanan v. Chicago Transit Auth.*, No. 16-CV-4577, 2016 WL 7116591, at \*5 (N.D. Ill. Dec. 7, 2016). Defendant attempts to justify its requests by asserting they relate to the damages plaintiff will have to prove. But this further demonstrates the impropriety of the requests because the parties dispute damages and requests for admission are intended "to narrow the issues at trial by identifying the matters on which the parties can *agree*." *Stanek v. St. Charles Comm. Unit Cummings Sch. Dist.*, No. 13 C 3106, 2020 WL 9348204, at \*5 (N.D. Ill. Sept. 3, 2020) (emphasis in original). Defendant's motion as to RFA Nos. 475-92 is denied.

## C.   Plaintiff's Contracts with Third Parties Containing Specific Language

### i.   RFP Nos. 121-22

Defendant requests plaintiff's other contracts since January 1, 2017 that relate to the sale of cans and use the same language as, or language similar to, a provision plaintiff added to the parties' contract. Dkt. 242-1 at 7. Defendant argues other contracts using this language are relevant to rebutting plaintiff's interpretation of the parties' contract. Dkt. 242 at 7-8. Plaintiff objects, arguing the requests are foreclosed by prior court rulings, the requests are not relevant, and the privacy interest of contracting third parties outweighs the benefit to defendant. The Court agrees. As the Court has already explained in detail, the terms of third-party contracts are not relevant or discoverable because defendant "has not shown how plaintiff's contracts with customers possessing a variety of business interests would

inform plaintiff's understanding or intentions regarding the Amended Agreement" with defendant. Dkt. 198 at 4. Notably, the District Judge agreed. Dkt. 323 at 4 ("The intent of the contract at issue in this case—to which ACB is a party—does not require the assistance of third-party contracts."). Accordingly, defendant's motion as to RFP Nos. 121-22 is denied.

### ii.     RFA Nos. 122, 381-82

Defendant asks plaintiff to admit that it is not a party to any other contracts that include the same language, or language similar to, the provision plaintiff added to the parties' contract. Dkts. 243-4 at 4, 243-5 at 5. Rule 36 allows a party to serve a request to admit "the truth of any matters within the scope of Rule 26(b)(1)." Fed. R. Civ. P. 36(a)(1). Because, as explained above, the terms of third-party contracts are not relevant to the parties' contract interpretation, RFA Nos. 122, 381-82 are not proper under Rules 36 and 26. Accordingly, defendant's motion as to RFA Nos. 122, 381-82 is denied.

### D.     Customer Forecasts, Contracts, and Supply Numbers

### i.     RFP Nos. 123-131; RFA Nos. 189, 279-90, 436-62

Defendant requests documents and admissions confirming the forecasts, contractual obligations, and supply numbers for plaintiff's other customers between 2020 and 2025. Dkts. 242-1 at 8-15; 242-5 at 11-18; 242-6 at 16, 28-33. Defendant argues the requests will show whether a specific customer purchased below its contractual obligations or plaintiff's forecasts and therefore contributed to plaintiff's alleged damages. Dkt. 242 at 8. Plaintiff argues individualized information about

the contracts and conduct of defendant's competitors is not relevant. Dkt. 249 at 11.

Plaintiff points to prior Court decisions prohibiting discovery on third-party

contracts and insists defendant may rebut damages by comparing "ACB v. non-

ACB" data. *Id.* at 12.

As the Court explained during the December 6, 2024 hearing and in previous

orders, Dkts. 198, 237, defendant has not articulated why it needs to discover the

contractual agreements and supply purchases as to each of its competitors. Thus,

the Court has repeatedly denied defendant's attempts to learn what specific

customers agreed to buy and actually bought. The Court will not revisit that ruling.

However, at the December hearing, the Court found that documents showing

whether any customer bought below its agreement or forecast would be relevant

and proportional so long as the third-party's information was protected.

Accordingly, the Court instructed the parties to meet and confer about anonymizing

spreadsheets so that defendant could compare a customer's forecast to its

purchases. This should have resolved the requests at dispute here, which defendant

asserts are intended to discover how purchasing volumes "compared to [the

customer's] forecasts and contractual obligations." Dkt. 242 at 9. Accordingly, the

motion as to these requests is denied. Nevertheless, by June 24, 2025, the parties

shall file a joint status report updating the Court on the status of their meet and

confer efforts after December and indicating whether any disputes remain as to

documents comparing non-ACB forecasts to non-ACB purchases.

###### ii.    RFA Nos. 292-94

Defendant asks plaintiff to admit it entered into a new or renewed contract for sleek cans with three customers in or after 2021. Dkt. 242-6 at 33-34. Defendant argues whether plaintiff executed a contract with a third party is relevant to whether plaintiff mitigated damages, and the existence of the contract is not confidential third-party information precluded by prior rulings. Dkt. 242 at 11. Plaintiff objects, but the Court agrees with defendant. The Court finds that whether plaintiff entered into contracts to replace the lost volume from defendant is relevant to mitigation. Further, the existence of a contract between plaintiff and other customers does not raise the same privacy concerns as contractual terms, forecast analysis, or sales volumes. Accordingly, defendant's motion as to RFA Nos. 292-94 is granted. By June 24, 2025, plaintiff shall amend its answers.

###### E.    Plant-Level Profit and Loss Statements, RFP Nos. 112-20

Defendant requests yearly earnings, operating, or profit and loss statements for each of plaintiff's facilities over a five-year period. Dkt. 242-1 at 5-6. Defendant argues the documents are necessary to rebut production and investment costs allocated to specific facilities. Dkt. 242 at 12. Plaintiff asserts that no responsive documents exist because plaintiff tracks profit and loss across its entire enterprise, not by facility. Dkt. 249 at 13. Plaintiff highlights that it already produced "CPM reports," which reflect facility production costs and support investment decisions. *Id.* at 13-14. Defendant insists this is insufficient. Highlighting plaintiff's expert report—which cites the CPM reports and other produced documents about

10

production costs—defendant concludes plaintiff has the ability to track profits and losses by facility and can therefore produce responsive reports. Dkt. 275 at 1-2.

The Court finds no further response to RFP Nos. 112-20 is necessary. Defendant fails to articulate how the CPM reports are insufficient when they demonstrate the information defendant purportedly seeks with RFP Nos. 112-20. *See* Dkt. 242 at 12 (insisting defendant "should be able to analyze whether a plant's operating costs were in part or fully the reason behind [plaintiff]'s decision to make certain investments); Dkt. 249 at 13 (explaining plaintiff's CPM reports "reflect the respective efficiency and production costs of each facility and which underly the investment proposals referenced by [defendant]"). Further, the Court understands defendant to be arguing because plaintiff (allegedly) *can* produce the information in a different format, plaintiff *must* do so. But Rule 34 clarifies that a party may "produce documents as they are kept in the usual course of business" and "[a] party need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(i), (iii). *See also Ahad v. Bd. of Trs. of S. Illinois Univ.*, No. 15-CV-3308, 2018 WL 534158, at *4-5 (C.D. Ill. Jan. 24, 2018) (finding responding party "did not have a duty to create a spreadsheet or database … when one did not exist" regardless if party "had the ability" to do so). Accordingly, plaintiff need not supplement its production and defendant's motion as to RFP Nos. 112-20 is denied.

### F.     Whitehouse Documents, RFP Nos. 134-35

Defendant requests all documents and communications related to approving or explaining the closure of plaintiff's Whitehouse facility. Dkt. 242-1 at 16-17. In response, plaintiff produced a financial overview spreadsheet and executive summary about the facility's closure. *Id.* Defendant argues this is insufficient and requests documents that discuss plaintiff's decision to close the facility, such as operational reviews and agendas, presentations, or documents provided to the Board of Directors. Dkt. 242 at 14. Plaintiff contends its response is sufficient because the produced spreadsheet and summary "are the only documents" plaintiff will rely on to support damages related to the facility closure. Dkt. 249 at 15.

Plaintiff's response to RFP Nos. 134-135 is deficient. The Court finds documents concerning the closure are relevant to rebutting plaintiff's alleged damages, and defendant is entitled to relevant documents, regardless of whether plaintiff intends to use a document to support its damages. *See* Fed. R. Civ. P. 26(b). Plaintiff represents that it has produced some responsive documents, but it does not assert that no additional responsive documents exist. This is inadequate. Accordingly, by June 24, 2025, plaintiff shall supplement its response to RFP Nos. 134-35.

### G.     Documents Underlying Costs of Capital Investments, RFP Nos. 138-44

Defendant seeks documents underlying the projected costs of plaintiff's capital investments in three manufacturing lines. Dkt. 242-1 at 17-19. Defendant asserts it has received only estimated costs and, to adequately rebut plaintiff's

damages, defendant argues it needs the actual costs incurred as well as documents underlying the costs of investments. Dkt. 242 at 14-15. Plaintiff insists it provided defendant with estimated and actual costs of capital investments, citing a workbook exhibit that includes a tab for both planned and actual costs. Dkt. 249 at 15.

The Court finds that RFP Nos. 138-144 seek relevant documents, but the Court cannot compel documents that have already been produced. Fed. R. Civ. P. 34(a)(1); *Luxottica Group S.p.A.*, 2023 WL 6520213, at *2. Defendant argues plaintiff has not produced everything because a Rule 30(b)(6) witness who testified about financial documents confirmed those documents contained only estimated costs. Dkt. 260 at 7. But one witness testifying about documents reflecting estimates does not lead to the conclusion that plaintiff has produced only estimates. Further, defendant does not dispute the contents of plaintiff's exhibit, which included estimated and actual investment costs. Nonetheless, to confirm that plaintiff has produced all responsive documents about investment capital costs, plaintiff is directed to complete a search and then either supplement production or provide a sworn certification stating that no other responsive documents are within its possession, custody, or control. *Luxottica Group S.p.A.*, 2023 WL 6520213, at *2. Notably, plaintiff does not affirmatively state that it has produced all responsive documents, it instead states that defendant "has the estimated and actually incurred costs underlying these investments." Dkt. 249 at 15-16. Defendant is "at least entitled to a response" confirming all responsive documents have been

13

produced. *Luxottica Group S.p.A.*, 2023 WL 6520213, at \*2. Plaintiff shall complete its search and supplement production or file the certification by June 24, 2025.

### H.    Contract Provisions, RFA Nos. 178, 179, 181, 182

RFA Nos. 178-79 ask plaintiff to admit that Section 3 of the parties' original agreement involves their obligations to each other relating to quality and supply issues. Dkt. 242-6 at 12-13. RFA Nos. 181-82 ask plaintiff to admit that Section 10 (1) involves plaintiff's obligations if it cannot fill orders, and (2) does not involve a third party. Dkt. 243-5 at 14-15. Plaintiff objects and argues that the RFAs call for a legal conclusion. Dkt. 249 at 16. The Court disagrees. Rule 36 allows requests for admissions as to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). Defendant is permitted to ask plaintiff to admit its understanding of and opinions about the agreement's provisions. *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 1165089, at \*4-5 (N.D. Ill. Mar. 25, 2021) (finding RFA about responsibilities under contract proper because it asked for opinion and application of law to the facts). Accordingly, defendant's motion as to RFA Nos. 178-79 and 181-82 is granted. By June 24, 2025, plaintiff shall amend its responses in accordance with Rule 36.

### IV.    Plaintiff's Motion to Compel

#### A.    Deposition Requests

##### i.    Kevin Grady and Phil Hodges

Plaintiff requests an opportunity to depose Kevin Grady and Phil Hodges because on the date discovery was scheduled to close, defendant supplemented its

14

initial disclosures to include them as witnesses with discoverable information. Dkt. 300 at 2. Mr. Grady is defendant's in-house counsel and Mr. Hodges is defendant's Chief Supply Chain Officer. Plaintiff argues the late disclosure prevented it from deposing Mr. Grady and Mr. Hodges. *Id.* at 2-5. Defendant responds that plaintiff had plenty of time to depose the witnesses because Mr. Grady and Mr. Hodges were identified in documents and depositions throughout discovery. The Court agrees with defendant.

Rule 26 requires each party to make an initial disclosure, identifying individuals likely to have discoverable information, and then timely supplement their disclosures if the party learns the initial disclosure is incomplete or incorrect. Fed. R. Civ. P. 26(a), (e). "However, such amendments are required only in certain circumstances, such as when the additional information has not otherwise been made known to the other parties during the discovery process." *Sterling Nat'l Bank v. Block*, No. 16 C 9009, 2018 WL 11200447, at *1 (N.D. Ill. Apr. 18, 2018) (quoting *Guitierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004), and Fed. R. Civ. P. 26(e)) (internal quotations omitted). On this record, the Court finds that regardless of defendant's disclosures, plaintiff otherwise knew that Mr. Grady and Mr. Hodges had relevant information. Mr. Grady was on phone calls and email exchanges with plaintiff, and he was mentioned in at least seven other depositions. Not only was Mr. Hodges referenced in other depositions, but plaintiff listed him as a relevant witness in its *own* supplemental disclosures—issued two months before the discovery deadline. Thus, defendant's supplemental disclosure did not, as

plaintiff insists, "prevent [plaintiff] from taking discovery under the previously-set discovery period." Although plaintiff understandably wanted to know about defendant's intended trial witnesses before the close of discovery, Rule 26 does not require a party to convey which witnesses "they actually intend to use." *Id.* (explaining Rule 26 requires only notice of a witness's existence and possession of relevant information).

Even if plaintiff did not have proper notice of Mr. Hodges and Mr. Grady as potential witnesses, the Court finds plaintiff has not established prejudice to warrant additional depositions. Plaintiff argues it needs to depose Mr. Grady about his interpretation of the amended agreement and depose Mr. Hodges about supply issues and can procurement. Dkt. 300 at 3-4. But deposition testimony about these topics would be duplicative of other testimony and written discovery. *See* Fed. R. Civ. P. 26(b)(2). Discovery must eventually come to an end and plaintiff had ample time to explore the topics it now seeks to revisit. Accordingly, plaintiff's motion as to deposing Mr. Grady and Mr. Hodges is denied. *See Lohmeier v. Gottlieb Mem'l Hosp.*, No. 19 CV 8136, 2021 WL 5005722, at *3-4 (N.D. Ill. Oct. 28, 2021) (denying request for additional depositions when party had ample time to conduct discovery and discovery would be duplicative); *Sterling Nat'l Bank*, 2018 WL 11200447, at *3 (denying request for depositions and concluding "if [moving party] suffer[s] any

prejudice from their election not to depose the [witnesses] in the first instance, those wounds are self-inflicted").

### ii. Scott Thornton and Zeb Robbins

Plaintiff wants to depose Scott Thornton and Zeb Robbins because defendant's expert—Scott Biondech—purportedly "relied upon" conversations with them. Dkt. 300 at 5. Plaintiff argues it is entitled to the "understanding or knowledge of the underlying basis of what was being conveyed" to Mr. Biondech, *id.* at 6-7, because Mr. Biondech "did not personally observe buildup" issues asserted in defendant's counterclaims, Dkt. 336 at 3. Defendant argues the depositions are unnecessary because Mr. Biondech "does not attribute a single fact in his report" to the conversations with Mr. Robbins and Mr. Thornton, and neither individual will testify at trial. Dkt. 303 at 6.

The Court will not compel depositions with Mr. Thornton and Mr. Robbins. After reviewing Mr. Biondech's expert report, the Court finds he did not rely on his conversations with Thornton and Robbins, therefore depositions with either are not warranted, especially at this late stage of discovery. Mr. Biondech notes that in addition to speaking with "various personnel" at defendant's facilities, he spoke with Mr. Thorton on one occasion and spoke with Mr. Robbins on another. Dkt. 366 at 11. Mr. Thornton is not mentioned anywhere else in the report. Mr. Robbins is mentioned one other time, where Mr. Biondech states that an email Robbins received (not wrote) corroborates Mr. Biondech's observations. *Id.* at 51. As a result, the report does not suggest Mr. Biondech's opinions are predicated on knowledge

17

from Mr. Thornton and Mr. Robbins that would require verification through direct deposition testimony. Further, plaintiff asserts Mr. Biondech did not personally observe the build-up issues, but plaintiff's assertion is contradicted by the report, *see* Dkt. 336 at 47, 51 (describing "[t]hese examples of rail buildup I witnessed in May 2024" and "the buildup I personally observed") and irrelevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993) ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). Ultimately, plaintiff fails to articulate a basis to compel additional depositions. Discovery is "not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Centurylink Commc'ns LLC v. Peerless Network, Inc.*, No. 18 C 3114, 2020 WL 11647818, at *3 (N.D. Ill. Jan. 28, 2020). Accordingly, plaintiff's motion to compel as to the depositions with Mr. Thornton and Mr. Robbins is denied.

### B.    Can-Testing Documents

Plaintiff asks the Court to compel production of all documents relating to defendant's testing and trialing of cans or to compel defendant to confirm all documents have been produced. Plaintiff does not identify which requests are in dispute. Instead, plaintiff attaches approximately forty pages of requests for production and generally argues that (1) documents related to trialing and testing are relevant, and (2) it reasonably believes defendant possesses additional, responsive documents. Dkt. 300 at 7-9, Exhibit 3. Neither argument is readily supported by the attached RFPs. From a cursory review of plaintiff's exhibit, twelve

of the requests do not even include the word "test" or "trial," while others lack clarity on what production has occurred because defendant responded that it would conduct searches and produce documents. It is not the Court's responsibility to review plaintiff's exhibit and decipher how the compiled requests and responses fit into the general arguments set forth in the motion. *Kosek v. Ethicon, Inc.*, No. 18 C 7477, 2020 WL 11563089, at *2 (N.D. Ill. Aug. 7, 2020). "Plaintiff has not outlined [its] argument in a manner that would allow the Court to adjudicate any alleged deficiencies." *Id.* Accordingly, the motion as to can-testing documents is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel, Dkt. 242, is granted in part and denied in part. By June 24, 2025, plaintiff shall (1) file a certification in response to RFP Nos. 108-11; (2) amend its responses to RFA Nos. 292-94; (3) amend its responses to RFA Nos. 178-79 and 181-82; and (4) supplement its responses to RFP Nos. 134-35 and 138-44. Also by June 24, 2025, the parties shall meet and confer and file a joint status report concerning document production of anonymized customer forecasts and purchases. Plaintiff's motion to compel, Dkt. 299, 300, is denied.


**So Ordered.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 6/10/2025